# Philadelphia and Reading Railroad Co. *versus* Ervin.

1. Where negligence was alleged to have arisen in the course of or connected with the business of a company, it was error to reject evidence of the nature and character of its business.

2. Where it was alleged that the negligence consisted in the company not providing cap-logs for their pier, it was error to overrule an offer to show that placing cap-logs thereon would interfere with the loading of vessels in the course of the business of the company.

3. A municipality cannot by ordinance create a civil duty enforceable at common law; that power reposes in the legislature. A non-compliance, therefore, with an ordinance imposing a duty whereby an injury results, does not render a defendant civilly liable to the party injured as for negligence.

4. Where an ordinance was specially declared upon and although the count wherein it was set forth was the subject of demurrer, the defendant permits the case to go to trial without demurrer, or any other traverse than that involved in the general issue, the ordinance may be admitted in evidence.

February 5th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas, No. 1, of *Philadelphia county :* Of January Term 1878, No. 250.

Case by James Ervin against the Philadelphia and Reading Railroad Company.

The *narr.* contained three counts. The first alleged that the defendant had two wharves upon the Delaware river, and had made a passage-way along the river edge between said wharves, and that it had erected on said wharves a cap-log; that the plaintiff was a porter, having a horse and cart, which, at the time of alleged grievance, was being used by him upon said wharves; that defendant wrongfully removed said cap-log without notifying the plaintiff, and that plaintiff and his servants being wholly ignorant of such removal, the horse and cart fell into the river and were lost.

The second count alleged that it was the duty of the defendant,

[Phila. & Reading Railroad Co. *v.* Ervin.]

under an ordinance of councils, to place upon every side of said wharves and passage-way a cap-log eight inches high; but that defendant wilfully refused and neglected to do so, by reason whereof the said plaintiff and his servants, being wholly ignorant of such neglect, said horse and cart fell into the river and were lost.

The third count alleged that defendant refused and neglected to keep said wharves and passage-way in good and safe order and condition, by reason whereof, &c.

The defendant pleaded "Not Guilty."

At the trial before Pierce, J., it appeared that plaintiff, who was the driver of a coal cart, in the course of his business, which consisted to a large extent of selling coal of the defendant, drove his cart upon the pier of defendant, which was not provided with a cap-log, and that from some unexplained cause the horse began to back, and notwithstanding the exertions of plaintiff, backed over the pier and was drowned.

Several witnesses on behalf of plaintiff were asked the following questions: " From your knowledge of the locality can you say whether or not it was a dangerous one to persons with horses and carts engaged in hauling coal, and if so, for what cause?" The witnesses answered that it was, and the admission of this evidence constituted the first assignment of error.

The second assignment was the admission in evidence of an ordinance of councils of the city of Philadelphia of April 16th 1857, which made the following provisions: " That it shall be the duty of every owner, or agent of such owner of any wharf upon the river Delaware or the river Schuylkill, within the city of Philadelphia, to place, or cause to be placed, on every side of such wharf which shall be next the river or dock, a cap-log, which shall be at least eight inches in height from the level of such wharf, and scalloped or pierced on the lower side thereof so as to allow the water to run off from the wharf.

" That if any owner or agent shall refuse or neglect to place such log as aforesaid * * * after notice to such owner or agent, he or they shall forfeit or pay the sum of $50, to be recovered as debts of like amount are by law recoverable."

The third assignment was the refusal of the court to allow the defendants to prove the nature of the business carried on upon the pier, and that placing cap-logs thereon would materially interfere with the loading of vessels.

In the general charge the court, inter alia, said, " It is a question for you, under all the circumstances, whether the plaintiff in any manner contributed by his own negligence to this accident. [It is for you also to consider, if the place where he took the horse was dangerous, whether it was negligence to take it there.]"

The portion of this charge in brackets was the fifth assignment.

The court reserved the following points:

1. Whether or not the ordinance of April 16th 1857, in regard to cap-logs, was intended to apply to public wharves only, and whether or not it has reference to private wharves upon enclosed pro-perty, such as the Reading coal wharves at Richmond.

2. Whether the city of Philadelphia had any authority to apply or enforce such an ordinance with reference to the private wharf property of the defendant.

3. Whether the defendant, as the owner of the coal wharves, was bound to provide the heads of the docks adjoining its wharves with cap-logs, and whether its omission so to do was negligence or evidence of negligence.

The verdict was for the plaintiff for $300, and the court afterwards entered judgment on the verdict, when defendant took this writ, among its assignments of error being those above noted, and the refusal of the court to enter judgment for defendant *non obstante veredicto* on the above reserved points.

*Thomas Hart, Jr.*, for plaintiff in error.—The ordinance should not have been admitted. An action for damages will not lie against a person for the neglect of a statutory duty merely because it is shown that damages have arisen from its non-performance : Atkinson *v.* New Castle Waterworks Co., 2 Law Rep. Exch. Div. 441; Couch *v.* Steel, 3 E. & B. 402; Stevens *v.* Jeacocke, 11 A. & E. (N. S.) 731; General Steam Nav. Co. *v.* Morrison, 13 C. B. 581; Kirby *v.* Boylston Market Association, 14 Gray 249; Flynn *v.* Canton Co., 40 Md. 312; Vandyke *v.* Cincinnati, 1 Disney 532; Chambers *v.* Ohio Life and Trust Co., 1 Id. 327. There is no power to annex civil liability to the violation of an ordinance : Heeney *v.* Sprague, 11 R. I. 456; Phillips *v.* Allen, 5 Wright 481; Butler's Appeal, 23 P. F. Smith 448. The defendant should have been permitted to show the nature of the business for which the pier was used, for it was not bound to put it in a condition which would unfit it for that purpose.

*Henry Reed* and *William W. Wiltbank*, for defendant in error.—Of the three counts of the declaration only one is upon the ordinance ; the action is for negligence at common law and the remedy under the ordinance is but cumulative. The plaintiff claimed not the penalty given by the ordinance, but his damages suffered. Where a statute gives a right not theretofore existing (as was the case in all the authorities cited by plaintiff in error), the remedy given by the statute is exclusive ; but where a statute commands or prohibits that which the common law had already commanded or prohibited, the statutory remedy is an additional one : Wheaton *v.* Hibbard, 20 Johns. 292; Lane *v.* Salter, 51 N. Y. (6 Sick.) 7; Richardson *v.* McDougall, 11 Wend. 47; Porter *v.* Mount, 41 Barb. 564; Dygert *v.* Schenck, 23 Wend. 451. See Washington Road *v.*

State, 19 Md. 287; Litchfield *v.* Simpson, 8 Q. B. 74; Collinson *v.* Newcastle Railway Co., 1 C. & K. 546.

The defendant was guilty of negligence in not having cap-logs on its wharf: Brown *v.* Lynn, 7 Casey 510; Swords *v.* Edgar, 59 N. Y. 31; Holmes *v.* N. E. Railway Co., Law Rep. 4 Exch. 257; White *v.* France, Law Rep. 2 C. P. Div. 310; Tobin *v.* Portland Railroad Co., 59 Me. 183; Freer *v.* Cameron, 4 Rich. 229; Wendell *v.* Baxter, 12 Gray 496; Carleton *v.* Franconia Co., 99 Mass. 216.

It is not always necessary for the witness to be an expert to enable him to give his opinion as to a matter depending upon his special practical knowledge if he states the facts upon which he bases his opinion: Beatty *v.* Gilmore, 4 Harris 466; Dunham's Appeal, 27 Conn. 192.

Mr. Justice GORDON delivered the opinion of the court, March 10th 1879.

In the determination of this case it is of no kind of consequence whether the wharf of the defendant below was a public or private one, since the plaintiff was there not as a trespasser nor by mere license, but upon not only his own business but also that of the company. It was engaged in the transportation and sale of coal, and he was engaged in delivering it to the company's customers, so that whilst he was not employed directly by the defendant, yet, it profited by his employment. The company then in this manner inviting and making it necessary for carters to come upon its premises, was bound to provide ways for horses and vehicles which were reasonably safe. It was, however, not bound to do more than this; if such ways were reasonably safe; if an ordinarily prudent man could drive along them without danger, the obligation of the defendant was fully discharged; it was not liable for extraordinary accidents, neither was it liable for results arising from a want of judgment or prudence on part of the plaintiff. Was the place where the plaintiff's carts stood unsafe? Then the question at once arises, why did he stand them there? He, himself, says he stopped where he did, in order to ascertain whether the coal he wanted was or was not on pier No. 11. For a purpose of this kind, it is clear if there was a safer place in the yard he might have taken it; nay, for that matter, he need not have entered the yard at all until he had discovered just where his coal was. If there was a safer place, which was reasonably convenient where he might have stationed his horses and carts, he ought to have selected such place; for he cannot call upon the company to protect him from accidents, from which he might have protected himself by a proper exercise of his own judgment. He knew the wharves were unprotected by cap-logs; he knew the nature of horses, certainly the nature of his own horses, quite as well or better than the company, and if, under such circumstances, he was not bound to select a place safe beyond peradventure for his own property

[Phila. & Reading Railroad Co. *v.* Ervin.]

neither was the company bound to cap their wharves in anticipation of the mulishness of his horses or of his own want of judgment.

Substantially, the charge of the learned judge of the Common Pleas, on this part of the case, was correct. But as the determination of this question of negligence must depend largely upon circumstances, we think the evidence, offered to prove the nature and character of the company's business, ought to have been received. If cap-logs would have been an obstruction to that business, it would show, at least, that they had not been omitted from mere carelessness or from a niggardly spirit of economy, and so the defendant would have a better standing with the jury on the question of damages. On the other hand, it was proper to prove, by persons acquainted with the place, that it was dangerous; for if it was obviously dangerous, an inference of the company's knowledge of that fact must be presumed.

We turn now to the second specification of error, and we are induced to consider it more because of our desire to relieve the case from doubt upon the re-trial than because of any error in the ruling. That assignment embraces the defendant's objection to the introduction in evidence of the city ordinance requiring the owners of wharves, on the Schuylkill and Delaware rivers, to put and maintain cap-logs upon them of a height not less than eight inches. The plaintiff, in one of the counts of his *narr.*, declared upon the ordinance as raising a duty which the defendant was bound to observe, and laid the damages, resulting from the loss of his horse and cart, as a consequence of the neglect of such duty. This count could not have stood the test of a demurrer; or had the court been asked to charge that upon this count the plaintiff could not recover, and also that upon the remaining counts the ordinance could not be regarded as evidence, it would have been bound so to charge.

For, let us suppose that these wharves were so constructed that, *extra* the ordinance, no charge of negligence could arise, and hence no common-law action would lie; would disobedience to this regulation, of itself, subject the company to such charge and action? This question would seem almost to answer itself; for if it be affirmed, then may civil duties and civil remedies be given or taken away by ordinances; a power as yet quite beyond the reach of municipal legislation.

The national or state legislature may do this, for it is the supreme power, and as such can make that immoral which was before indifferent, and that neglect which was before prudence, but the city of Philadelphia has no such power. Its ordinances are but police regulations enforceable by penalties, recoverable by actions of debt or otherwise as may be prescribed, but if not so enforced they come to nothing. An ordinance may forbid the maintenance, by my neighbor, of a cesspool upon his premises, and it may, by penalty, compel him to abate it, but whether it does so or not, I may, if I am damaged thereby, have my common-law action against him, but if I

am not damaged I am without remedy; in this the ordinance neither helps nor hinders. This matter is well stated by Spencer, J., in the case of Vandyke *v.* The City of Cincinnati, Disney's Rep. 532, thus: "I conclude, then, that the ordinance imposed upon Harrison a public duty alone, which can only be enforced by the penalty prescribed, and non-performance of which does not subject him to a civil action at the suit of a person injured." In arriving at this conclusion the learned justice uses the argument I have thought proper to adopt; that is, an ordinance cannot create a civil duty enforceable at common law. For if a city council has power so to do—if it has the power to create such obligation, it must also have the power to restrict it, in other words to prescribe the sole consequences arising therefrom, but it will, we apprehend, be conceded that a power, like the one here indicated, is wholly beyond the province of such a body.

There are indeed cases where such ordinances have been received in evidence in common-law actions for negligence, but they are generally such as enter into the case itself or enforce a common-law duty. Such are ordinances regulating the speed of railroad trains when passing through towns or cities. Here the ordinance may, and usually does, enter into the question of negligence, for the rate of speed to be anticipated has much to do with the care to be exercised by those crossing the tracks. So, on the other hand, those in charge of trains are not only subject to the common-law duty of passing through towns slowly and cautiously, but they must know that persons depending upon the observance of the municipal regulations will not take all that care which would be required in the open country. The case in hand, however, involved no such duties. Whether the defendant should or should not have had cap-logs upon its wharves was a matter which addressed itself to the judgment of those having its affairs in hand. The omission of these caps did not, *per se*, involve the company in any responsibility beyond the penalty of the ordinance. Neither could the plaintiff have placed any dependence upon the observance of such ordinance, for he knew that if it applied at all to the defendant's wharves it had not been observed; he knew that he must depend for the preservation of his property upon his own care and skill, and, these failing, he then had his common-law remedy for compensation.

Under the pleadings, however, the ordinance was properly admitted, for the plaintiff having declared upon it, and the defendant having permitted the case to go to trial without demurrer or any other traverse than that involved in the plea of not guilty, he, the plaintiff, had a right to introduce this evidence in order to have the judgment of the court thereon. It follows that this case can be reversed only for the error, already adverted to, which was committed in overruling the defendant's offer of evidence as embraced in the third specification.

Judgment reversed, and a new *venire* ordered.