570 A.2d 834

McCRORY CORPORATION

v.

Robert G. FOWLER

Misc. No. 11, Sept. Term, 1988.

Court of Appeals of Maryland.

March 7, 1990.

Jean V. MacHarg (Ronald S. Liebman, Daniel E. Waltz, Patton, Boggs & Blow, Washington, D.C.; Jeffrey R. Mann, Paul H. Aloe, Rubin, Baum, Levin, Constant & Friedman, New York City, on brief), for appellant.

Barry Goldstein, Washington, D.C. (Gary Howard Simpson, Bethesda, Daniel B. Edelman of Washington, D.C., J. LeVonne Chambers, New York City, on brief), for appellee.

Michael L. Foreman, Gen. Counsel, Glendora C. Hughes, Asst. Gen. Counsel, on brief, for amicus curiae State of Maryland Com'n on Human Relations of Baltimore.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL,* JJ.

ELDRIDGE, Judge.

Pursuant to the Maryland Uniform Certification of Questions of Law Act,[1] the United States District Court for the District of Maryland has certified to this Court the following two questions concerning a Montgomery County ordinance:

"(1) Did enactment of Section 27–20(a) of the Montgomery County Code, which creates a private cause of action for employment discrimination entitling a claimant to sue for damages, injunctive or other civil relief, exceed the authority delegated to chartered home rule counties by the Express Powers Act, Md.Ann.Code art. 25A, Section 5 (1987)?

"(2) If enactment of Section 27–20(a) did not exceed the authority delegated by the Express Powers Act, is it nevertheless invalid under Article XI–A, Section 3 of the Maryland Constitution because it conflicts with or is preempted by the laws and policies of the State as set forth in Article 49B of the Maryland Code?"

The United States District Court further stated that "the form of the Court of Appeals' response" should not be dependent on the above formulation of the questions, and that it "hopes that the Court of Appeals will feel free to render its opinion in the manner which it deems most appropriate."

---

* Blackwell, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

1. Maryland Code (1974, 1989 Repl.Vol.), §§ 12–601 through 12–609 of the Courts and Judicial Proceedings Article.

We hold that, although the Montgomery County ordinance is not preempted by Art. 49B of the Maryland Code,[2] nevertheless it is not a "local law" under Article XI-A of the Maryland Constitution. Thus, the Express Powers Act, Code (1957, 1987 Repl.Vol.), Art. 25A, did not and could not authorize Montgomery County to enact the ordinance.

Robert Fowler, a white male, managed a store for McCrory Corporation. Fowler alleged that one of McCrory's managers told him not to hire any more black persons or persons under thirty-five years of age, and that when Fowler requested McCrory executives to repudiate this directive, they refused to do so. Thereafter, Fowler claimed, he was harassed and eventually constructively discharged in retaliation for his protest. Fowler brought an action for money damages against McCrory in the Circuit Court for Montgomery County, asserting a cause of action under 42 U.S.C. § 1981 and a common law cause of action for abusive discharge. At McCrory's request, the case was removed to the United States District Court for the District of Maryland. Fowler filed an amended complaint in the United States District Court, deleting the common law abusive discharge count and adding a count under § 27–20(a) of the Montgomery County Code, which creates a private cause of action to remedy violations of a county anti-employment discrimination ordinance. Fowler was granted leave to file a second amended complaint, in which he added a cause of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

McCrory filed a motion to dismiss the cause of action based upon § 27–20(a) of the Montgomery County Code, arguing, *inter alia*, that the section exceeds the authority delegated to chartered home rule counties.

---

**2.** *See Makovi v. Sherwin–Williams Co.,* 316 Md. 603, 605, 608, 561 A.2d 179, 180 (1989); *Md.–Nat'l Cap. P. & P. Comm'n v. Crawford,* 307 Md. 1, 22–31, 511 A.2d 1079, 1090–1095 (1986); *National Asphalt v. Prince George's County,* 292 Md. 75, 437 A.2d 651 (1981).

Section 27–20(a) is part of a legislative scheme enacted by the Montgomery County Council to combat discrimination. Chapter 27, Article I, of the Montgomery County Code establishes the Montgomery County Commission on Human Relations and provides for its jurisdiction. Sections 27–1 through 27–7B of Article I concern the administration, duties and procedures of the Commission. The remaining sections of Article I are divided into four divisions, with each division addressing a different area of discrimination: Places of Public Accommodation, Real Estate, Employment, and "Racial and Religious Intimidation." This case involves the third division, employment, codified at §§ 27–17 through 27–26.

Section 27–19(a) makes it an unlawful employment practice for an employer to discriminate against any individual because of the individual's race, color, religious creed, ancestry, national origin, age, sex, marital status, handicap, or sexual orientation. Fowler contended that McCrory violated this section by engaging in unlawful employment discrimination based on race and age. Section 27–19(b) prohibits retaliation against any person on account of that person's lawful opposition to a violation of, *inter alia*, § 27–19(a). Fowler claimed that McCrory engaged in unlawful retaliation against him.

Section 27–20(a) creates the cause of action at issue in this case:

"Any person who has been subjected to any act of discrimination prohibited under this division shall be deemed to have been denied a civil right and shall be entitled to sue for damages, injunction or other civil relief, including reasonable attorney's fees; provided, however, that no suit shall be commenced until forty-five (45) days after a complaint alleging such an act of discrimination has been filed with the commission...."

In this suit under the above-quoted ordinance, Fowler is seeking over $1.8 million in compensatory and punitive damages.

Montgomery County has chartered home rule under Article XI–A of the Maryland Constitution. Article XI–A was proposed by Ch. 416 of the Laws of Maryland of 1914 and ratified by the voters on November 2, 1915. The Article, known as the Home Rule Amendment, enabled counties, which chose to adopt a home rule charter, to achieve a significant degree of political self-determination. Its purpose was to transfer the General Assembly's power to enact many types of county public local laws to the Art. XI–A home rule counties. *See generally, e.g., Bd. of Election Laws v. Talbot County*, 316 Md. 332, 344, 558 A.2d 724 (1989); *Griffith v. Wakefield*, 298 Md. 381, 384, 470 A.2d 345 (1984); *Town of Forest Heights v. Frank*, 291 Md. 331, 342, 435 A.2d 425 (1981); *Cheeks v. Cedlair Corp.*, 287 Md. 595, 597–598, 415 A.2d 255 (1980). As the Court explained in *State v. Stewart*, 152 Md. 419, 422, 137 A. 39, 41 (1927) (emphasis supplied):

"The wisdom of incorporating in the organic law of the state such provisions as are contained in this article had been urged for a number of years prior to its adoption, the reasons assigned by its proponents being that a larger measure of home rule be secured to the people of the respective political subdivisions of the state *in matters of purely local concern,* in order that there should be the fullest measure of local self-government, and that these local questions should thus be withdrawn from consideration by the General Assembly, leaving that body more time to consider and pass upon general legislation, and to prevent the passage of such legislation from being influenced by what is popularly known as 'log-rolling'; that is, by influencing the attitude and vote of members of the General Assembly upon proposed general laws by threatening the defeat or promising the support of local legislation in which a particular member might be peculiarly interested."

Sections 1 and 1A of Article XI–A empower Baltimore City and the counties of Maryland to adopt a charter form of local government. Section 2 directs the General Assem-

bly to provide a grant of express powers for charter home rule counties. The General Assembly followed that directive and enacted the Express Powers Act by Ch. 456 of the Laws of Maryland of 1918, codified as Code (1957, 1987 Repl.Vol.), Art. 25A. Section 3 of Article XI–A provides (emphasis supplied):

> "From and after the adoption of a charter by the City of Baltimore, or any County of this State, as hereinbefore provided, the Mayor of Baltimore and City Council of the City of Baltimore or the County Council of said County, subject to the Constitution and Public General Laws of this State, shall have full power to enact *local laws* of said city or county ... upon all matters covered by the express powers granted as above provided...."

Article XI–A "does not constitute a grant of absolute autonomy to local governments." *Ritchmount Partnership v. Board,* 283 Md. 48, 56, 388 A.2d 523, 529 (1978). This Court's decisions and the above-quoted passage make it clear that the Home Rule Amendment limits the Montgomery County Council to enacting "local laws" on matters covered by the Express Powers Act.

Thus, it is first necessary to determine whether § 27–20(a) of the Montgomery County Code is a "local law." In prohibiting the General Assembly from enacting public local laws for Baltimore City and charter home rule counties on subjects covered by the Express Powers Act, Section 4 of Article XI–A states that "[a]ny law so drawn as to apply to two or more of the geographical subdivisions of this State shall not be deemed a Local Law, within the meaning of this Act." As this Court has pointed out, "[a]part from that limitation, [Article XI–A] attempts no definition of the distinction between a local law and a general law, but leaves that question to be determined by the application of settled legal principles to the facts of particular cases in which the distinction may be involved." *Dasch v. Jackson,* 170 Md. 251, 260, 183 A. 534, 537–538 (1936).

In *Steimel v. Board,* 278 Md. 1, 5, 357 A.2d 386, 388 (1976), we stated that a local law "in subject matter and substance" is "confined in its operation to prescribed territorial limits...." A general law, on the other hand, "'deals with the general public welfare, a subject which is of significant interest not just to any one county, but rather to more than one geographical subdivision, or even to the entire state.'" *Steimel,* 278 Md. at 5, 357 A.2d at 388, quoting *Cole v. Secretary of State,* 249 Md. 425, 240 A.2d 272 (1968). Moreover, the Court has held that "some statutes, local in form," are "general laws, since they affect the interest of the whole state." *Cole v. Secretary of State,* 249 Md at 434, 240 A.2d at 278.

Several decisions by this Court illustrate that laws, which may appear to be local in form, might not constitute "local laws" under Article XI-A. In *Gaither v. Jackson,* 147 Md. 655, 128 A. 769 (1925), the Court held that a state statute providing for gubernatorial appointment of auctioneers in Baltimore City, with payment by the auctioneers of license fees and duties to the State, was not a "local law" under Article XI-A. The Court emphasized that "a law is not necessarily a local law merely because its operation is confined to Baltimore City or to a single county, if it affects the interests of the people of the whole state." 147 Md. at 667, 128 A. at 773. The state law, which Baltimore city sought to repeal by ordinance, did not constitute a "local law affecting only the people of Baltimore City because it provides revenue for the whole State." *Ibid.*

In *Dasch v. Jackson, supra,* 170 Md. 251, 183 A. 534, this Court held that a state statute concerning the licensing of paper hangers in Baltimore City was not a "local law" within the meaning of Article XI-A. The statute imposed "taxes or fees designed to produce a surplus payable into the general funds of the State ... and to that extent affects to some extent the people of the whole State." 170 Md. at 261, 183 A. at 538. Furthermore, the statute affected "the right of persons not residing in the City of Baltimore as well as the right of persons residing within that city to

engage in the business of paper hanging in Baltimore City, either as contractors or journeymen." *Ibid.*

*Norris v. Baltimore,* 172 Md. 667, 192 A. 531 (1937), involved a statute requiring the use of voting machines in Baltimore City. While the statute was only operative in Baltimore City, the Court held that it was not a local law under Art. XI–A, saying (172 Md. at 682, 192 A. at 538):

> "[A]lthough it is only effective within a limited area, it regulates the manner in which citizens of the state residing in that area may exercise rights which affect the citizens of the whole state; for, while it applies only to elections held in Baltimore, the result of elections held there may determine what persons are to administer the government of the state, what laws are to regulate the conduct of its inhabitants, who are to represent it in the national senate, and who is to serve as the chief executive of the nation. It is not therefore a public local law within the meaning of the term 'local laws' as used in Md. Const., Art. 11A."

*See also, Bradshaw v. Lankford,* 73 Md. 428, 21 A. 66 (1891) (prohibition of oyster dredging in Somerset County is not a "local law"; dredging prohibition would deprive people of the entire state of their common right to take oysters within the waters of that county).

As the Court summarized in *Cole v. Secretary of State, supra,* 249 Md. at 435, 240 A.2d at 278, the "rationale of these cases lies in the concept that while the immediate objective sought to be achieved was local in character, the statutes indirectly affected matters of significant interest to the entire state: *i.e.,* regulation of elections, control of natural resources, and protection of state revenues derived from licenses."

Section 27–20(a) of the Montgomery County Code authorizes a private citizen to seek redress for another private citizen's violation of a county anti-employment discrimination ordinance by instituting a judicial action in the courts of the State for, *inter alia,* unlimited money damages.

Fowler, for example, is seeking over $1.8 million. While a plaintiff must first file a complaint with an administrative agency, he is free to institute a civil action after forty-five days have elapsed. In the present case, the administrative agency followed its standard policy and closed Fowler's complaint when he "decided to pursue his claim in a judicial forum." Thus, the judicial action is effectively independent of any county administrative proceeding.

In creating a new judicial cause of action between private individuals, § 27–20(a) encroaches upon an area which heretofore had been the province of state agencies. In Maryland, the creation of new causes of action in the courts has traditionally been done either by the General Assembly or by this Court under its authority to modify the common law of this State. *See, e.g., Adler v. American Standard Corp.,* 291 Md. 31, 432 A.2d 464 (1981) (recognizing tort actions for abusive discharge). Furthermore, the creation of new judicial remedies has traditionally been done on a statewide basis.

Abusive employment practices constitute a statewide problem which has been addressed by the General Assembly in Article 49B of the Maryland Code and by this Court in *Adler v. American Standard Corp., supra.* It is true that the field has not been preempted by the State, and that home rule counties have concurrent authority to provide administrative remedies not in conflict with state law. Nevertheless, creating a remedy which has traditionally been the sole province of the General Assembly and the Court of Appeals, to combat a statewide problem such as employment discrimination, goes beyond a "matter[ ] of purely local concern." *State v. Stewart, supra,* 152 Md. at 422, 137 A. at 41. Like the measures in *Gaither v. Jackson, supra, Dasch v. Jackson, supra,* and *Norris v. Baltimore, supra,* § 27–20(a) of the Montgomery County Code affects "matters of significant interest to the entire state" and cannot qualify as a "local law" under Article XI–A.

A contrary holding would open the door for counties to enact a variety of laws in areas which have heretofore been

viewed as the exclusive province of the General Assembly and the Court of Appeals. For example, could a county ordinance authorize in the circuit court and the District Court negligence actions in which contributory negligence would not be a bar? Could a county ordinance provide for breach of contract suits upon "contracts" not supported by consideration, or where the parol evidence rule is inapplicable? We believe that the answer is "no." These, and many other legal doctrines, are matters of significant interest to the entire State, calling for uniform application in state courts. They are not proper subject matters for "local laws."

Chief Judge Cardozo recognized that certain areas of the law are matters of statewide concern when he wrote about a city home rule provision in New York's Constitution (*Adler v. Deegan*, 251 N.Y. 467, 167 N.E. 705, 713 (1929) (Cardozo, C.J., concurring)):

> "In every case, 'it is necessary to inquire whether a proposed subject of legislation is a matter of State concern or of local concern.' .... There are other affairs exclusively those of the state, such as the law of domestic relations, of wills, of inheritance, of contracts, of crimes not essentially local ..., the organization of courts, the procedure therein. None of these things can be said to touch the affairs that a city is organized to regulate, whether we have reference to history or to tradition or to existing forms of charters."

Other courts are in agreement. *See, e.g., Ampersand, Inc. v. Finley* 61 Ill.2d 537, 540, 338 N.E.2d 15, 17 (1975); *Burgin By and Through Akers v. Tolle,* 500 N.E.2d 763, 767 (Ind.App.1986); *City of Bloomington v. Chuckney,* 165 Ind.App. 177, 180–181, 331 N.E.2d 780, 783 (1975); *Marshal House, Inc. v. Rent Rev. & Griev. Bd. of Brookline,* 357 Mass. 709, 714, 260 N.E.2d 200, 204 (1970).

Fowler relies heavily on *County Council v. Investors Funding,* 270 Md. 403, 312 A.2d 225 (1973), and *Mont. Citizens League v. Greenhalgh,* 253 Md. 151, 252 A.2d 242 (1969). In *Investors Funding,* the Court took the position

that the Express Powers Act, Art. 25A, granted chartered counties the authority to enact *local* laws having the effect of revising (within the express powers granted) the common law. 270 Md. at 419, 312 A.2d at 234. Nonetheless, the county ordinance upheld in that case provided enforcement remedies of a much more limited nature than the cause of action created by § 27–20(a) of the Montgomery County Code. The Court in *Investors Funding* held that § 5(S) of the Express Powers Act granted the Montgomery County Council the authority to enact local legislation regulating the apartment rental business and landlord-tenant relationships within the county.[3] A county commission was granted remedial powers to terminate leases, order repairs, and award limited damages to an aggrieved party. Judicial review of the commission's action was authorized. The role of the circuit court in this scheme was the same as the court's established limited role in reviewing administrative agency decisions. *See Holiday Spas v. Montgomery County*, 315 Md. 390, 554 A.2d 1197 (1989).

In *Greenhalgh, supra,* this Court held that § 5(S) of the Express Powers Act authorized Montgomery County to enact a fair housing law that prohibited discrimination in the sale or rental of housing, and in the lending of money for home purchases, construction or repairs. Since no challenge was made to specific provisions of the law, the Court found no need to rule on any of its particular provisions. 253 Md. at 165, 252 A.2d 242. Nevertheless, as was the case with the ordinance in *Investors Funding*, the ordinance involved in *Greenhalgh* did not attempt to create

---

**3.** Fowler relies on language in the *Investors Funding* case to the effect that § 5(S) is to be construed as a broad grant of power to legislate on matters not specifically enumerated in the Express Powers Act. *County Council v. Investors Funding*, 270 Md. 403, 413, 312 A.2d 225 (1973) (quoting *Mont. Citizens League v. Greenhalgh*, 253 Md. 151, 160–161, 252 A.2d 242 (1969)). *See also Snowden v. Anne Arundel County*, 295 Md. 429, 432–433, 456 A.2d 380 (1983). While language in our previous opinions supports a broad reading of § 5(S), that section cannot authorize a county to enact an ordinance that is not a "local law" under Article XI–A of the Constitution.

a new judicial cause of action in circuit court. *See* 253 Md. at 154, 252 A.2d at 243.

Our holding today is in accord with the position taken in 6 McQuillin, *Municipal Corporations* (3rd Ed.Rev.), § 22.01:

> "The well-established general rule is that a municipal corporation cannot create by ordinance a right of action between third persons or enlarge the common law or statutory duty or liability of citizens among themselves. Under the rule, an ordinance cannot directly create a civil liability of one citizen to another or relieve one citizen from liability by imposing it on another."

A number of courts in other jurisdictions have held accordingly. *See, e.g., Bain v. Ft. Smith Light & Traction Co.,* 116 Ark. 125, 133–134, 172 S.W. 843, 845–846 (1915); *Tynes v. Gogos,* 144 A.2d 412, 417 (D.C.1958); *City of Joplin v. Wheeler,* 173 Mo.App. 590, 604, 158 S.W. 924, 928 (1913); *Orr v. Baltimore & Ohio R. Co.,* 168 App.Div. 548, 550, 153 N.Y.S. 920, 921 (1915); *Vandyke v. City of Cincinnati and Harbeson,* 1 Disney 532, 535 (Superior Court of Cincinnati, Ohio 1857); *Phila. and Reading Railroad Co. v. Ervin,* 89 Pa. 71, 75 (1879); *Heeney v. Sprague,* 11 R.I. 456, 461 (1877). *See also* Sandalow, *The Limits of Municipal Power Under Home Rule: A Role for the Courts,* 48 Minn.L.Rev. 643, 678 (1964); Comment, *Municipal Home Rule Power: Impact on Private Legal Relationships,* 56 Iowa L.Rev. 631, 633 (1971).

Fowler points out that the Attorney General of Maryland has concluded that a charter home rule county has authority to specify a private right of action in court as a remedy for violation of a county law. 73 Op.Att'y.Gen. No. 88–023 (May 24, 1988). The ordinance addressed in the Attorney General's opinion created a private right of action for a vehicle owner whose vehicle has been improperly towed or damaged, and specified damages at "3 times the amount of any towing, release or storage fees charged." The Attorney General's opinion cited two cases, one from Oregon and one from Colorado. In *Papen v. Karpow,* 56 Or.App. 673, 643 P.2d 375 (1982), the Court of Appeals of Oregon held

that a city snow removal ordinance did not create a private cause of action. The court did state, however, that "[t]he City may, by express provision, give third parties a right of action against the abutting owner...." 56 Or.App. at 677, 643 P.2d at 377–378. The Supreme Court of Colorado, in *Bittle v. Brunetti*, 750 P.2d 49, 59 (Colo.1988), cited *Papen* in concluding that "[w]e therefore prefer the approach adopted in Oregon, which makes clear that a municipality can create a right of action against abutting owners 'by express provision,' but that a snow removal ordinance imposing only a penalty does not change the common law no liability rule."

Snow removal and towing ordinances, unlike employment discrimination ordinances, deal with subject matters of a peculiarly local nature. Moreover, a primary purpose of a snow removal ordinances is to aid a municipal corporation in carrying out one of its own legal duties. *See New Highland v. Fries*, 246 Md. 597, 229 A.2d 89 (1967); *Weisner v. Mayor of Rockville*, 245 Md. 225, 228, 225 A.2d 648 (1967); *Flynn v. Canton Co.*, 40 Md. 312 (1874).

Section 27–20(a) of the Montgomery County Code is quite different from the ordinances addressed by the Attorney General and by the Oregon and Colorado cases. The ordinance involved in the present case creates a new private judicial cause of action for unlimited money damages and injunctive relief as a remedy for employment discrimination, a matter of statewide concern. The county ordinance here attempts to accomplish that which has heretofore been viewed as the sole province of state institutions, *i.e.*, the General Assembly and Court of Appeals.

We hold, therefore, that an ordinance attempting to combat employment discrimination by creating a new private judicial cause of action is not a "local law" under Article XI–A of the Maryland Constitution, and thus is not within the power of Montgomery County to enact.

CERTIFIED QUESTIONS ANSWERED AS HEREIN SET FORTH. COSTS IN THIS COURT TO BE EQUALLY DIVIDED.