Serita J. WEATHERSBY

v.

## KENTUCKY FRIED CHICKEN NATIONAL MANAGEMENT COMPANY.

### No. L–91–2668.

United States District Court,
D. Maryland.

Sept. 30, 1992.

---

Alan Banov and David Fishman, Washington, D.C., for plaintiff.

Richard F. Shaw and Patricia A. Dunn, Washington, D.C., for defendant.

## MEMORANDUM

LEGG, District Judge.

This Court is called upon to decide defendant's motion to dismiss or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. Because plaintiff's claims are barred by *res judicata,* defendant's motion for summary judgment will be GRANTED, and judgment will be entered in its favor as to all counts.

### I. *Facts*

Plaintiff Serita Weathersby ("Weathersby") was an employee of defendant Kentucky Fried Chicken National Management Company ("KFC") from 1979 until her resignation in 1989. This case arises out of the circumstances surrounding her departure from KFC. Plaintiff's complaint alleges that defendant retaliated against her, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3, when it suspended, demoted, and constructively discharged her after she complained about her supervisor's romantic involvement with a subordinate.

Weathersby had a number of conflicts with her immediate supervisor, Lee Watts ("Watts"), throughout her tenure at KFC. One source of conflict was Watts's alleged romantic relationship with one of Watts and Weathersby's mutual subordinates at the store. Another conflict surrounded the investigation of a theft at a KFC branch.

There was a theft, on January 14, 1988, from the safe at the branch where Weathersby was employed as training store manager. Weathersby was not scheduled to work that day, so the loss was discovered by an assistant manager. There had been no forced entry to the store or the safe.

In the course of the investigation which followed, polygraph tests were administered to Weathersby and other employees. Weathersby expressed concern that Watts was not subjected to the tests. She noted that his access to the safe was identical to that of the tested employees.

On February 7, 1988, Watts informed Weathersby that she was being demoted to an assistant manager position because of "serious misconduct." [1] Weathersby then suffered a nervous breakdown and took a medical leave of absence that continued until her resignation on January 15, 1989.

Following her demotion, Weathersby filed suit against both Watts and KFC in the Circuit Court for Montgomery County, Maryland on March 18, 1988. *See Weathersby v. Kentucky Fried Chicken Nat'l Management Co.*, No. 030877 (Cir.Ct.Mont. Co. March 18, 1988). Her five count complaint alleged: (i) tortious employment practices, (ii) breach of employment contract, (iii) discrimination, (iv) reprisal, and (v) intentional infliction of emotional distress.

On April 8, 1988, Weathersby filed an administrative complaint with the Montgomery County Human Relations Commission. This complaint was cross-filed with the Equal Employment Opportunity Commission. Weathersby's administrative complaint alleged race and sex discrimination against KFC; she also alleged that KFC retaliated against her for complaining about Watts's workplace romance.

On June 24, 1988, Weathersby amended her state court complaint by adding the discrimination and reprisal allegations contained in her administrative complaint.[2] As amended, the complaint advanced the following counts: (Count I) wrongful suspension and demotion; (Count II) sexual harassment and reprisal;[3] (Count III) discrimination on account of handicap; (Count IV) racial and sexual discrimination; (Count V) wrongful constructive discharge; (Count VI) breach of employment contract; (Count VII) defamation; and (Count VIII) intentional infliction of emotional distress.

Prior to trial, Weathersby voluntarily withdrew the sexual harassment allegations of Counts II (sexual harassment and reprisal), IV (racial and sexual discrimination), and VII (defamation). KFC and Watts then moved for judgment on the remaining counts. The trial court granted defendants' motion as to Counts I (wrongful suspension and demotion) and V (wrongful constructive discharge). The trial, lasting eight days, proceeded on the remaining counts.

At the conclusion of Weathersby's case-in-chief, KFC and Watts moved for judgment on all remaining counts. The trial court granted defendants' motion as to the Count II reprisal claim, and denied the motion as to the other counts.[4] The jury returned verdicts in favor of KFC on the breach of contract and racial discrimination claims. The jury, however, found in favor of Weathersby on the intentional infliction of emotional distress claim (Count VIII). Following the return of the jury verdict, KFC and Watts moved for judgment not withstanding the verdict ("JNOV"). The court granted a JNOV on Count VIII.

Weathersby then appealed to Maryland's intermediate appellate court, the Court of Special Appeals. She raised the following points:

---

1. The record reflects that this "misconduct" consisted primarily of Weathersby's refusal to take a second polygraph test, and her objection to Watts' alleged workplace romance.

2. Pursuant to the Montgomery County Code, section 27–20(a), complaints under the County Human Relations Law may be filed in court after forty-five days if they have not yet been decided by the County Commission.

3. Plaintiff brought her reprisal claim under sections 27–19(b) and 20(e) of the Montgomery County Code.

4. Plaintiff contends that the trial court effectively dismissed her reprisal claim (Count II) on the fourth day of trial by refusing to allow her to introduce evidence that she contends was vital to that claim (Tr. 989–95). It is clear from the record, however, that the trial court did not dismiss the retaliation claim until Weathersby had closed her case-in-chief (Tr. 1693–1715, 1726–28). It is also clear that the trial court told Weathersby's counsel on the fourth day of trial that (i) the court would not rule on the viability of Count II until the close of plaintiff's case and (ii) that the court intended to allow any evidence that it considered relevant to the reprisal claim. The trial court stated: "I do not know what it is you can prove, and I am not going to prevent you from putting on whatever you want, that I believe will properly support or properly be admissible as to that, and as to the constructive firing." (Tr. 971–72).

(i) the circuit court erred in dismissing Counts I and V (wrongful suspension and wrongful constructive discharge by KFC when Watts disciplined Weathersby for objecting to an illegal polygraph);

(ii) the court erred by dismissing Count II (her claim that KFC violated the Montgomery County Human Relations Law, Montgomery County Code, § 27–19, by disciplining her in reprisal for her complaint about Watts' relationship with their subordinate); and

(iii) the circuit court abused its discretion by overturning the jury verdict in her favor on Count VIII (intentional infliction of emotional distress).

The Court of Special Appeals affirmed the circuit court's dismissal of Weathersby's claims for wrongful discharge (Counts I and V), and reprisal (Count II). The appellate court, however, reinstated the jury verdict on the count for intentional infliction of emotional distress (Count VIII). *Weathersby v. Kentucky Fried Chicken Nat'l Management Co.*, 587 A.2d 569 (Md.App.1991).

The trial court had dismissed Weathersby's reprisal claim (Count II) on the ground that a voluntary romantic relationship between Watts and the subordinate could not form the basis of a sex discrimination suit in favor of Weathersby under section 29–19(b) of the Montgomery County Code. Weathersby, however, contended that her supervisor's romance illegally created an intimidating, hostile or offensive working environment. Citing Equal Employment Opportunity Commission regulations under Title VII, Weathersby argued that the trial court should have allowed Count II to go to the jury.

Section 27–19(a) of the Montgomery County Code makes it an unlawful employment practice for an employer to discriminate against any individual because of the individual's race, color, religious creed, ancestry, national origin, age, sex, marital status, handicap or sexual orientation. Section 27–19(b) prohibits an employer from retaliating against any person on account of that person's lawful opposition to a violation of, *inter alia*, section 27–19(a).

Section 27–20(a) creates a private right of action in favor of any person who has been subjected to an act of discrimination outlawed by the Montgomery County civil rights law.

In affirming the circuit court's dismissal of Count II (reprisal), the Court of Special Appeals did not reach the merits because the statute on which that claim was based had been struck down as unconstitutional by the Court of Appeals of Maryland, the state's highest court, during the pendency of Weathersby's appeal. *See McCrory Corp. v. Fowler*, 319 Md. 12, 570 A.2d 834 (1990) (finding Montgomery County anti-discrimination ordinance unconstitutional because not a "local law" and therefore *ultra vires* as exceeding authority of Montgomery County Council).

Because Weathersby had based her reprisal claim on an invalid statute, the Court of Special Appeals affirmed dismissal of Count II. Weathersby did not petition the Court of Appeals of Maryland for a writ of certiorari.

KFC and Watts, however, petitioned for, and were granted, a writ of certiorari on the issue of intentional infliction of emotional distress (Count VIII). *Kentucky Fried Chicken Nat'l Management Co. v. Weathersby*, 324 Md. 90, 595 A.2d 1077 (1991). The Court of Appeals reversed the judgment of the Court of Special Appeals on this one issue, holding that the employer's conduct had not been sufficiently atrocious to justify a plaintiff's verdict. *Kentucky Fried Chicken Nat'l Management Co. v. Weathersby*, 326 Md. 663, 607 A.2d 8 (1992).

On September 16, 1991, Weathersby filed a Title VII action in this Court. *See* 42 U.S.C. § 2000e–3, *et. seq.* Her complaint contains two counts: (i) wrongful retaliatory suspension and demotion, and (ii) wrongful retaliatory constructive discharge. In essence, plaintiff seeks to relitigate in federal court Count II of her state complaint by the expedient of basing her claim on a federal statute (Title VII) instead of the Montgomery County Code.

KFC argues that Weathersby's Title VII action is precluded by the earlier state

court proceedings, and moves for dismissal or, in the alternative, for summary judgment. The Court agrees that Weathersby's claim is barred by the doctrine of *res judicata,* or claim preclusion, and will GRANT KFC's motion for summary judgment.

II. *Discussion*

This Court finds that there are no material facts in dispute and that this case is therefore appropriate for summary disposition. *See* Fed.R.Civ.P. 56.

The full faith and credit clause of article IV of the United States Constitution, as implemented by 28 U.S.C. § 1738, requires federal courts to give the same preclusive effect to state court judgments as would be given to them in state court. *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 *reh'g denied,* 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1405 (1982). The Supreme Court has held that this principle applies to federal civil rights actions which follow on the heels of actions in state court. *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).

In determining whether Weathersby's state action precludes her present federal claim, this Court is governed by the State of Maryland's rules of preclusion. *See Snell v. Mayor and City Council of Havre de Grace,* 837 F.2d 173, 175 (4th Cir.1988). The Maryland Court of Appeals has adopted the "transaction" test from the Restatement (Second) of Judgments § 24 to determine whether two causes of action are the same.[5] *See Kent County Bd. of Educ. v. Bilbrough,* 309 Md. 487, 525 A.2d 232, 238 (1987).

Generally, under Maryland law, *res judicata* serves as a final bar to subsequent litigation if the prior litigation produced (i) a final judgment on the merits, (ii) on the same cause of action, (iii) between the same parties or their privies. *Snell,* 837 F.2d at 175; *Kutzik v. Young,* 730 F.2d 149, 151 (4th Cir.1984); *Alvey v. Alvey,* 225 Md. 386, 171 A.2d 92, 94 (1961).

The Supreme Court has written that "a final judgment on the merits of the action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Kremer v. Chemical Constr. Corp.,* 456 U.S. at 467 n. 6, 102 S.Ct. at 1890 n. 6; *see also Mackall v. Zayre Corp.,* 293 Md. 221, 443 A.2d 98, 102 (1982) (where the same parties litigate the same cause of action as in a prior suit, "all matters actually litigated or that could have been litigated are conclusive in the later suit"). Claim preclusion avoids the expense of repetitive litigation, the waste of judicial resources, and the risk of inconsistent judgments. *Murray Int'l Freight Co. v. Graham,* 315 Md. 543, 555 A.2d 502, 503–04 (1989).

There is no question that the instant case involves the same parties as the state court case. It is also clear that Weathersby's federal complaint makes the same allegations against KFC that she made in the state suit. She contends in both suits that KFC unlawfully suspended, demoted and constructively discharged her in retaliation for her complaints about her supervisor's romance with one of their mutual subordinates.

Weathersby seeks to avoid *res judicata,* however, by arguing that the trial court committed reversible error by dismissing her reprisal claim (Count II), and that the Court of Special Appeals was preventing from correcting that mistake because the Montgomery County Code provisions on which she relied had been found unconstitutional by the time of her appeal. She contends that her reprisal claim, therefore, was not fully litigated on the merits.

This Court must address two questions in order to determine whether Weathers-

---

5. Section 24 states that the determination of what is to constitute a "transaction" for purposes of the test is "to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Restatement (Second) of Judgments § 24 (1982).

by's federal complaint is viable. First, whether it makes a difference that her prior state action was based upon the Montgomery County Code while the instant case proceeds under a different anti-discrimination statute, Title VII. Second, whether plaintiff can avoid *res judicata* because the Court of Special Appeals did not address the dismissal of Count II on the merits.

Both of these questions must be answered in the negative. *Res judicata* plainly bars "claims arising out of the same transaction even if brought under different statutes." *Kremer v. Chemical Constr. Corp.*, 456 U.S. at 481 n. 22, 102 S.Ct. at 1897 n. 22; *see also Nash County Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484 (4th Cir.), *cert. denied*, 454 U.S. 878, 102 S.Ct. 359, 70 L.Ed.2d 188 (1981). Indeed, the Court of Appeals has stated that it is "settled here that a mere change in the legal theory, applied to the same set of facts previously litigated, will not in and of itself avoid claim preclusion...." *Kent County Bd. of Educ. v. Bilbrough*, 525 A.2d at 236.[6]

Additionally, the trial court dismissed Count II on the merits because, in its view, Weathersby had failed to prove a prima facie case. This dismissal, therefore, constituted a judgment on the merits. A judgment on the merits triggers claim preclusion. *See* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4444 (1981 and 1992 Supp.).[7] The judgment of the Court of Special Appeals affirming the dismissal of Count II is also a final judgment that went to the merits of Weathersby's claim, and also gives rise to claim preclusion. *Id.*

By refiling Count II under Title VII, Weathersby is, in effect, asking this Court to reverse the Maryland trial court's dismissal of her retaliation claim. To this end plaintiff argues: "It is now up to this Court to correct the injustice suffered by plaintiff at the hands of defendant and the Maryland state courts and, as a step in that direction, to deny defendant's motion with prejudice." Pl.'s Supp.Mem. in Opp. to Def.'s Mot. at 3.

■ Weathersby misunderstands the function of the federal courts. This Court does not have the authority to reverse alleged errors committed by the Maryland state courts by, in effect, granting a new trial to the defeated party. An error in the first court's judgment does not dispel the *res judicata* effect of the judgment. *Stebbins v. Nationwide Mut. Ins. Co.*, 528 F.2d 934, 936 (4th Cir.1975), *cert. denied*, 424 U.S. 946, 96 S.Ct. 1417, 47 L.Ed.2d 353 (1976); *see also De Maio v. Lumbermens Mut. Cas. Co.*, 247 Md. 30, 230 A.2d 279, 281 (1967) ("If, as here, the court rendering the earlier judgment had jurisdiction of the parties and the subject matter, the fact that its final judgment was erroneous or irregular will not prevent that judgment from acting as a bar to a relitigation of the cause of action which was merged in the

---

6. The two statutes on which Weathersby relied are similar. Section 27–19(b) of the Montgomery County Code provides, in part, that:

> It shall be a violation of this division for any person to ... retaliate against any person because such person has lawfully opposed any act or failure to act that is a violation of this division.

While Title VII states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter....

42 U.S.C. section 2000e–3(a).

Although the Court of Appeals struck down section 27–19(b) of the Montgomery County Code as unconstitutional, *McCrory Corp. v. Fowler*, 319 Md. 12, 570 A.2d 834 (1990), Weathersby's claims in both federal and state court involved the identical circumstances surrounding her departure from KFC, and were based on similar legal theories.

7. The Maryland Court of Appeals has stated that, where "there is an unqualified dismissal of a bill of complaint, the presumption is that the issue was disposed of on the merits and that the decree past is *res judicata*." *Sterling v. Local 438, Liberty Ass'n of Steam & Power Pipefitters*, 207 Md. 132, 113 A.2d 389, 394 (1955), *cert. denied*, 350 U.S. 875, 76 S.Ct. 119, 100 L.Ed. 773 (1955); *see also Kutzik v. Young*, 730 F.2d at 151 (dismissal of complaint based on sovereign immunity is a final judgment for preclusion purposes); *Moodhe v. Schenker*, 176 Md. 259, 4 A.2d 453 (1939).

judgment.").[8]

The doctrine of *res judicata* exists so that there will be an end to litigation. Those who have contested an issue are bound by the result of the contest, and the matters that were tried are forever settled between the parties. *See Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 394–95, 101 S.Ct. 2424, 2424–26, 69 L.Ed.2d 103 (1981).

Plaintiff had a full opportunity to choose her legal theories and to litigate her case. She presented her retaliation claim to the state court during a trial that lasted eight days and produced a 2100–page record on appeal. Having lost that case, she is not entitled to litigate it anew in federal court.[9]

## III. *Conclusion*

For the reasons set forth above, the defendant's motion for summary judgment will be GRANTED and judgment will be entered in its favor on all counts by a separate order of even date.

---

**8.** Had she chosen to do so, Weathersby could have brought her original suit as a Title VII claim in federal court, or she could have filed her retaliation claim under the general Maryland anti-discrimination statute, Md.Ann.Code art. 49B, §§ 14–18.

**9.** Not only are the underlying facts the same in these two actions, but Weathersby even argued federal law in the state court proceeding. As the Court of Special Appeals noted, Weathersby, in the circuit court proceedings, argued that she made out a case of reprisal under federal case law and based her retaliation claim on a theory of sex discrimination developed under Title VII. *Weathersby,* 587 A.2d at 576.