DISTRICT COUNCIL 20, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO, et al., Plaintiffs,

v.

The DISTRICT OF COLUMBIA, et al., Defendants.

No. CIV.A.97–0185(EGS).

United States District Court, District of Columbia.

July 10, 2001.

138

Michael Stephen Wolly, Wendy L. Kahn, Daniel G. Orfield, Zwerdling, Paul, Leibig, Kahn, Thompson & Wolly, P.C., Washington, DC, for District Council 20, Sandra Thomas, Ronald Lloyd, Lashalle Lomax, Mary L. Smith-Wynn, Donnette Armwood, Barbara Rousey, Amer. Federation of Government Employees, AFL-CIO, Valencia P. Bray, Tadjudeen Balogun, Grace Arrindell, Joan Frederick, Mary Hubbard, Annette Walker.

Michael Stephen Wolly, Wendy L. Kahn, Zwerdling, Paul, Leibig, Kahn, Thompson & Wolly, P.C., Washington, DC, Edward J. Smith, Nat. Ass'n for Government Employees, Arlington, VA, Orrin Dole Baird, Washington, DC, for National Ass'n of Government Employees, Local R3-05.

John F. Karl, Jr., Washington, DC, Michael Stephen Wolly, Wendy L. Kahn, Daniel G. Orfield, Zwerdling, Paul, Leibig, Kahn, Thompson & Wolly, P.C., Washington, DC, Stephen Craig Leckar, Butera & Andrews, Washington, DC, for Ana Escobar.

Jack M. Simmons, III, Office of Corp. Counsel, D.C., Washington, DC, Mary E. Pivec, Greenberg Traurig, L.L.P., Washington, DC, for District of Columbia.

Mary E. Pivec, Greenberg Traurig, L.L.P., Washington, DC, for Anthony Williams.

Daniel A. Rezneck, D.C. Financial Responsibility & Mangement Assist. Auth., Washington, DC, for District of Columbia Financial Responsibility & Management Assistance Authority, amicus.

## MEMORANDUM OPINION & ORDER

SULLIVAN, District Judge.

Former financial management employees and their unions challenge the summary dismissals of these employees by the District of Columbia's Chief Financial Officer as violations of the First Amendment of the United States Constitution. Pending before this Court is defendants' motion to dismiss the Third Amended Complaint. Upon careful consideration of the pleadings, relevant statutes, case law, and the record herein, defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

On January 24, 1997, the District of Columbia's Chief Financial Officer ("CFO"), Anthony Williams, summarily dismissed approximately 168 District accounting, budget, and financial management employees.[1] The CFO gave no notice to the discharged employees, who were each given identical letters from the CFO informing them of their immediate discharge from District service. The letters did not state the reason for the discharge. During a press conference held the day of the terminations, the CFO stated that he discharged the financial office employees because they lacked commitment to their jobs and performed their work poorly.

On January 31, 1997, District Council 20 of the American Federation of State, County, and Municipal Employees ("AFSCME"), AFL–CIO, AFSCME Locals 2276, 2087, 1200, and 2401, the National Association of Government Employees, Local R–3–05/Service Employees International Union, the American Federation of Government Employees ("AFGE"), and AFGE Local 383 (collectively referred to as "the union plaintiffs"), as well as eight terminated employees filed this lawsuit. The suit was brought against the District of Columbia, the Mayor, and the CFO. Plaintiffs challenged the terminations as violations of their constitutional and statutory rights.

This Court granted summary judgment for defendants on all the original claims. See *District Council 20 v. District of Columbia,* 1997 WL 446254 (D.D.C. July 29, 1997). The Court dismissed the due process claims on the grounds that the federal legislation that bestowed personnel authority on the CFO converted the Office of the CFO employees into "at will" employees and implicitly repealed the D.C. law that required terminations for cause. The Court also rejected the liberty interest claims, concluding that the CFO's public statements about the terminated employees were not sufficiently stigmatizing to inflict a constitutional injury. This Court had denied the First Amendment claims against Williams in his individual capacity because plaintiffs had not met the D.C. Circuit's heightened pleading standard re-

---

1. In the Summer of 1996, the CFO, exercising the same authority alleged here, discharged approximately 60 financial office employees.

quiring "clear and convincing evidence" of an unconstitutional motive to overcome Williams' entitlement to qualified immunity. *See District Council 20,* 1997 WL 446254 at *12 (relying on *Crawford–El v. Britton,* 93 F.3d 813 (D.C.Cir.1996) *overruled by* 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998)). The Court had also denied the First Amendment claims against the CFO in his official capacity holding that plaintiffs failed to prove, as required by 42 U.S.C. § 1983, that the CFO was acting as a "Final Policymaker" when he allegedly violated their First Amendment rights. *See District Council 20 v. District of Columbia,* No. 97–0185, Oct. 8, 1997 Order (D.D.C.)

The United States Court of Appeals for the District of Columbia affirmed this Court's summary judgment decision, except for the First Amendment claims. *See District Council 20 v. District of Columbia,* 159 F.3d 636, 1998 WL 388360 (D.C.Cir.1998). It remanded the First Amendment claims against Williams in his individual capacity to this Court for consideration in light of the Supreme Court's decision in *Crawford El,* which rejected the D.C. Circuit's "clear and convincing evidence" pleading standard for claims against public officials in their individual capacities. It also reversed this Court's ruling that the CFO was not acting as a "Final Policymaker" when he terminated the individual plaintiffs. The Court of Appeals then directed this Court to "decide in the first instance which of the plaintiffs have spoken on matters of public concern or participated in associational activity implicating matters of public concern so as to have live First Amendment claims for which discovery was appropriate." *District Council 20,* 159 F.3d at 636.

Subsequent to the D.C. Circuit's ruling, the remaining plaintiffs filed a Third Amended Complaint. The Third Amended Complaint added more terminated employees as individual plaintiffs. Plaintiffs assert that defendants retaliated against them for exercising their rights to freedom of speech and association in violation of the First Amendment of the United States Constitution and 42 U.S.C. § 1983.

This opinion addresses both the motion to dismiss, and the D.C. Circuit's remand. Defendants' motion to dismiss argues that the union plaintiffs lack standing and that plaintiffs fail to state a claim. The Court finds that the union plaintiffs do have standing to assert the claims here, but are limited to declaratory and injunctive relief. Further, the Court finds that all plaintiffs state a claim against the CFO in his official capacity, but only one plaintiff states a claim against Williams in his individual capacity.

## II. JURISDICTION

Defendants contend that the union plaintiffs cannot assert First Amendment claims against defendants under 42 U.S.C. § 1983 because such individual claims for damages are only cognizable when brought by the citizens those laws were enacted to protect. *See Hague v. Committee of Indust. Org.,* 307 U.S. 496, 514, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); *Air Transport Association of America v. Reno,* 80 F.3d 477, 483 (D.C.Cir.1996); *Telecommunications Research and Action Center v. Allnet Communication,* 806 F.2d 1093, 1094–94 (D.C.Cir.1986); *L.S.T. v. Crow.,* 49 F.3d 679, 682 n. 6 (11th Cir.1995). The union plaintiffs rely on *Allee v. Medrano,* 416 U.S. 802, 819 n. 13, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974), a First Amendment case involving declaratory and injunctive relief to assert standing. Plaintiffs focus on the type of claim asserted, while defendants focus on the type of relief requested.

It is settled law that an organization has standing to sue on behalf of its

members who would otherwise have standing to sue in their own right when the interest it seeks to protect is germane to the organization's purpose. *See Hunt v. Washington State Apple Advertising Comm.*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). However, an organization can only have standing if "neither the claim asserted nor the relief requested requires participation of individual members in the lawsuit." *Id.* at 343, 97 S.Ct. 2434.

█ The union plaintiffs have standing to assert First Amendment claims; however, they cannot seek monetary damages in this case. Here, any monetary damages are predicated on proving the claims of the individual members of the union, who are present and litigating on their own behalf. If the union plaintiffs were seeking only monetary damages, they would be dismissed for lack of standing. However, the union plaintiffs also seek declaratory and injunctive relief. Accordingly, the union plaintiffs may remain in the case as plaintiffs to assert their claims for declaratory and injunctive relief, but not monetary damages.

## III. SUBSTANTIVE CLAIMS

Defendants move to dismiss the Third Amended Complaint for failure to state a claim upon which relief can be granted. Defendants argue that 1) plaintiffs failed to identify any conduct deserving of First Amendment protection; 2) Williams cannot be held liable in his official capacity for negligently failing to train supervisors to evaluate their subordinates, and subsequently relying on those evaluations in making personnel decisions; and 3) plaintiffs failed to plead a basis for extending liability to Williams in his individual capacity.

In considering a motion under Rule 12(b)(6), the Court must accept plaintiffs' factual allegations as true, see *Albright v. Oliver*, 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and draw all inferences in plaintiffs' favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994). To prevail, the government must show "beyond doubt that the plaintiff[s] can prove no set of facts in support of [plaintiffs'] claim which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### A. *Protected Activity*

Judicial scrutiny of public employees' claims that they were punished for exercising First Amendment rights requires a four-step analysis:

First, the public employee must have been speaking on a matter of public concern.... Second, the court must balance the interest of the employee as a citizen, in commenting upon matters of public concern and the interest of the employer in promoting the efficiency of the public services it performs through its employees.... Third, the employee must prove that her speech was a substantial or motivating factor in the [adverse action].... Finally, the government employer must be given an opportunity to prove that it would have reached the same decision even absent the protected conduct.

*Tao v. Freeh*, 27 F.3d 635, 638–39 (D.C.Cir.1994) (internal quotations and citations omitted). The first two factors are questions of law for the Court to resolve, while the latter are questions of fact ordinarily for the jury. *Id.* (citing *Hall v. Ford*, 856 F.2d 255, 258 (1988)). At issue here is whether the individual plaintiffs spoke on matters of public concern.[2]

Defendants argue that plaintiffs fail to state First Amendment claims because they cannot demonstrate that they were speaking on matters of public concern. Plaintiffs argue that the Court's previous holding on this issue constitutes law of the case. In July 1997, this Court held that union membership and the activity alleged in this case met the public concern test, assuming arguendo that the public concern requirement does apply to retaliation claims based on the freedom to associate. *See District Council 20*, 1997 WL 446254 at *10. The Court noted that federal courts are split on the issue of whether the public concern test applies to claims of retaliation based on associational freedoms, as opposed to retaliation based on actual speech and that the D.C. Circuit has not addressed the issue. *See id.*

The dispute between the parties seems to turn on the language of the remand. The Court of Appeals stated that the July 1997 Order was affirmed "except with respect to the cause of action pursuant to the First Amendment of the United States Constitution against the Chief Financial Officer. That portion of the case is remanded to the district court for reconsideration in light of the decision of the Supreme Court in *Crawford–El v. Britton.*" The remand order continued stating that "[i]t is for the district court to decide in the first instance which of the plaintiffs have spoken on matters of public concern or participated in associational activity implicating matters of public concern so as to have live First Amendment claims for which discovery was appropriate." *District Council 20*, 159 F.3d 636, 1998 WL

388360. Defendants interpret this language as a mandate to this Court to revisit the issue of whether plaintiffs' union activity constitutes a matter of public concern to trigger First Amendment protection. Plaintiffs, on the other hand, insist that this Court's earlier finding is settled law of the case and that the remand merely instructs the Court to determine which plaintiffs are entitled to discovery.

█ The law of the case doctrine provides that a court involved in later stages of a lawsuit should not decide questions that already were decided by that court or a higher court in earlier stages of the litigation. *See Taylor v. FDIC*, 132 F.3d 753, 761 (D.C.Cir.1997). Thus, this Court must determine whether the Court of Appeals decision has any effect on its holding that the speech at issue here touches on matters of public concern.

█ Plaintiffs' interpretation, that the remand order does not disturb this Court's holding that the public concern test has been satisfied, is more persuasive. The Court of Appeals did not provide guidance on the issue of whether the speech at issue here touches a matter of public concern. It merely stated that this Court should reconsider the qualified immunity issue in light of *Crawford–El. Crawford–El* did not address the public concern test for First Amendment claims, but rather addresses the burden of pleading for a constitutional tort as it relates to the issue of qualified immunity and the need to decide the strength of the immunity claim before discovery. The Court of Appeals then instructed this Court to determine which, if any, plaintiffs are entitled to discovery, an issue this Court did not address in *District*

---

2. The Court has already held that the second requirement is satisfied, namely, that the discharged union employees' interest in participating in union activities outweighs the District's legitimate interest in efficient public service. *See District Council 20*, 1997 WL 446254 at *11. This holding has not been challenged by defendants in it motion to dismiss the Third Amended Complaint.

*Council 20* since it found that the qualified immunity defense applied and that the CFO was not acting as a "Final Policymaker." This Court reaffirms its holding in *District Council 20* and concludes that the union membership and the activity alleged in this case meet the public concern test. *See District Council 20*, 1997 WL 446254 at *9–11. Speech relating to public concern addresses political, social or other issues of interest to the community. *See Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *see also United States v. National Treasury Employees Union*, 513 U.S. 454, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995) (holding that the Court must determine whether "the employee spoke as a citizen upon matters of public concern or as an employee upon matters only of personal interest." (internal quotations and citations omitted)); *Fox v. District of Columbia*, 83 F.3d 1491, 1493–95 (D.C.Cir.1996). The conduct at issue in the present case is labor union membership and participation. As the Fifth Circuit noted, "speech in the context of union activity will seldom be personal; most often it will be political speech." *Boddie v. City of Columbus*, 989 F.2d at 745, 750 (5th Cir.1993). Such is the case here. Thus, the Court concludes that the union membership and activity at issue in this case falls within the "public concern" definition.[3]

### B. *Liability of Defendant Williams in His Official Capacity*

 Plaintiffs seek liability against Williams in his official capacity. A local governmental unit is subject to suit under 42 U.S.C. § 1983. Respondeat superior will not suffice to impose section 1983 liability on the District. *See Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). The municipality's policy must be the source of the discrimination. The case law has identified three instances in which a municipality can be said to have violated the civil rights of a person because of its policy: (1) an express policy that, when enforced, causes a constitutional deprivation, *see, e.g., Monell*, 436 U.S. at 690, 98 S.Ct. 2018, (2) "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law,'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); or (3) an allegation that the constitutional injury was caused by a person with "final policymaking authority," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion).

 The Court of Appeals for the District of Columbia held that Williams was a Final Policymaker for purposes of municipal liability with respect to the conduct at issue. As such, the municipality would only be liable if "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *See Pembaur*, 475 U.S. at 483, 106 S.Ct. 1292.

 With respect to Ana Escobar, plaintiffs allege that Williams had first hand knowledge of her extensive union

---

**3.** As stated in this Court's earlier opinion, the conclusion that the first requirement is satisfied in this case is not a holding that satisfaction of this requirement is necessary where a plaintiff alleges retaliation based on associational freedoms. Resolution of that issue is better left for another day. *See District Council 20*, 1997 WL 446254 at *10 n. 8.

activities, that these activities were mentioned in her evaluation, and Williams made the decision to terminate her over the recommendation of her immediate supervisor. These facts are sufficient to put defendants on notice of a colorable claim that Williams' order violated Escobar's First Amendment rights.

None of the other individual plaintiffs allege that their termination by Williams was inconsistent with the recommendations by their supervisors. Instead, they assert that Williams negligently failed to train subordinates to avoid evaluating employees based upon protected activities and subsequently relying on those evaluations in making personnel decisions. Under this theory of liability, plaintiffs must allege a formal policy that when enforced causes a constitutional violation, or a widespread practice that is so permanent and well-settled as to constitute custom or usage with the force of law and that such policy was adopted with deliberate indifference as to its known or obvious consequences.

In *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court held that a municipality can be held liable under 42 U.S.C. § 1983 for inadequate training of its employees only where such failure to train amounts to deliberate indifference to the rights of the persons affected. In *Atchinson v. District of Columbia*, 73 F.3d 418, 421–24 (D.C.Cir.1996), the Court of Appeals held that a complaint merely alleging a failure to train and an instance where a constitutional violation arose as a result withstood a motion to dismiss. There, the complaint alleged that "the District of Columbia intentionally, negligently, and with deliberate indifference and callous and wanton disregard for [plaintiff's] rights, failed to appoint, supervise, train and/or promote members … who would

enforce the laws." *Atchinson*, 73 F.3d at 421.

■ Here, plaintiffs allege that in each instance where a union member was terminated: 1) Williams adopted the evaluation system used to determine that the employee should be terminated in substantial and motivating part for his/her protected First Amendment associations, activities, and/or speech; 2) Williams was deliberately indifferent to whether the supervisors low evaluations would result in the employee being terminated in substantial and motivating part for his/her protected First Amendment associations, activities, and/or speech; 3) Williams failed to train the supervisors to prevent them from negatively evaluating and causing terminations in substantial and motivating part for protected First Amendment associations, activities, and/or speech; and 4) Williams decided himself to terminate the employee in substantial and motivating part for his/her protected First Amendment associations, activities, and/or speech. As was the case in *Atchinson, 73 F.3d at 423*, the Complaint's use of the phrase deliberate indifference without additional factual allegations regarding such alleged indifference is not fatal. This Court is satisfied that the complaint's allegations put Williams on notice that plaintiffs' claims are based on his failure to train the supervisors responsible for evaluating plaintiffs. That said, plaintiffs will need to show more about any alleged lack of training, deliberate indifference, and the causal connection to prevail on the merits. *See Atchinson, 73 F.3d at 421.*

C. *Liability of Defendant Williams in His Individual Capacity*

In July 1997, this Court held that plaintiffs failed to present clear and convincing evidence that Williams acted with an unconstitutional motive, citing *Crawford–El v. Britton*, 93 F.3d 813 (D.C.Cir.1996).

The Supreme Court in *Crawford–El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) has since rejected the D.C. Circuit's clear and convincing pleading standard, though it did stress that the qualified immunity defense remains a vital bar against excessive litigation directed at government officials. The Supreme Court held that a court "must determine whether, assuming the truth of the plaintiff's allegations, the official's conduct violated clearly established law." Thus, the emphasis shifted from testing the strength of the pleading of unconstitutional motive to testing the strength of the qualified immunity defense. Notwithstanding, the Supreme Court has continued to place particular emphasis on protecting public officials, who may have to make tough decisions when exercising their discretion. *See Crawford–El*, 523 U.S. at 592, 118 S.Ct. 1584. For purposes of qualified immunity, a right is "clearly established" if "the contours of that right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wilson v. Layne*, 526 U.S. 603, 119 S.Ct. 1692, 1699, 143 L.Ed.2d 818 (1999); see also *Farmer v. Moritsugu*, 163 F.3d 610, 613 (D.C.Cir.1998). The "clearly established right" requirement protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); see, e.g., *Garcia v. District of Columbia*, 56 F.Supp.2d 1, 14 (D.D.C.1998) (no immunity, because "any reasonable correctional officer must know that retaliation for the filing of a grievance would violate the inmate's constitutional rights"). In short, the doctrine gives ample room for mistaken judgments by government officials acting in the discharge of their duties. See, e.g., *Harris v. D.C.*, 932 F.2d 10 (D.C.Cir.1991) (police had no clearly established obligation to obtain medical care for drug overdose victim who died in custody).

■ Williams knew or should have known that it is impermissible to use protected First Amendment associations as a substantial motivating factor in a termination decision. The First Amendment's guarantee of freedom of speech protects government employees from termination because of their speech on matters of public concern. See *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). All but one of the terminations at issue here were based on the results of performance evaluations conducted by the managers and supervisors of the Office of the CFO. The one exception is the termination of Ana Escobar.

■ Though the Court has already held that Escobar states a claim against Williams in his official capacity, it is still necessary to review the allegations to determine whether they are sufficient to withstand Williams' qualified immunity. As stated previously, Escobar, the President of local union 2776, comprised entirely of financial services personnel, alleges that Williams had first-hand knowledge of her extensive union activities, that these activities were mentioned in her evaluation, and that Williams made the decision to terminate her over the recommendation of her immediate supervisor. Escobar alleges that she had communicated to Williams her challenge to his previous decision not to recognize the Union and bargain collectively. She wrote Williams requesting information regarding terminations that occurred in 1996, but Williams did not respond. She also criticized certain privatization efforts in a memorandum to Williams and the Control Authority. Escobar also attended community meetings called by Williams, as well as other meetings raising issues about agency op-

erations. In 1997, Escobar's immediate supervisor recommended that her employment be continued, but did note the fact of her union activity on the rating form. A higher level supervisor lowered Escobar's rating, but still agreed that her employment should be continued. This second form also indicated the fact of Escobar's union activity. Williams terminated Escobar despite the recommendations that her employment should be continued.

With respect to Escobar, plaintiffs' allegations are sufficient to withstand a motion to dismiss. Plaintiffs alleged that Williams had direct knowledge of Escobar's union activities and speech. They also alleged that Williams departed from his usual practice by not following the recommendations of the supervisors to whom he delegated evaluation responsibility. Thus, it is reasonable to infer from the facts stated in the Complaint that Escobar's termination was not based on her evaluations or supervisor recommendations. It is possible that Escobar's union activity was a substantial motivating factor in her ultimate discharge by Williams.

Accordingly, Escobar has sufficiently pled that Williams conduct violated clearly established law. Thus, Escobar states a claim against the CFO, then Anthony Williams, in his individual capacity for retaliation based on protected speech and activity. In so deciding, this Court acknowledges that the general rule prohibiting retaliation has long been established. Furthermore, the substantive legal doctrine on which Escobar relies has also been established. The court, in analyzing whether the speech at issue satisfies the public concern test, did not establish new law.

While qualified immunity on Escobar's 42 U.S.C. § 1983 claims under the First Amendment is inappropriate at this early pleading stage, it may be appropriate at a later stage. In accordance with the Supreme Court's guidance in *Crawford–El*, 523 U.S. at 598, 118 S.Ct. 1584, this Court orders plaintiffs to reply to defendants' answer, so that it may revisit the qualified immunity question again before permitting discovery.[4] No other plaintiff states a claim for retaliation against the CFO in his individual capacity.

All plaintiffs, including Escobar, also argue that Williams' alleged negligent failure to train subordinates to avoid evaluating employees based upon protected activities and subsequently relying on those evaluations in making personnel decisions should provide a basis for individual liability. Defendants argue that the financial situation defendant Williams inherited, and was charged by Congress to correct, renders the circumstances so novel that there were no prior precedents in existence at the time to warn him that his personnel decisions may have been unlawful. Under defendants' theory, nearly anything Williams did, or did not do, would be acceptable. The Court does not agree that the novelty of the situation eliminates all constraints on Williams' actions. Despite the novelty of the situation, the employees terminated were District employees and union members who are entitled to certain constitutional protections.

That said, the theory of individual liability asserted by plaintiffs is certainly novel. Plaintiffs do not cite any legal au-

---

4. An example given in *Crawford–El* is illustrative of why such a procedure is prudent. *See* 523 U.S. at 594, 118 S.Ct. 1584. It may be the case that even if plaintiff Escobar can show that protected speech was a motivating factor in her termination, the CFO may still prevail by showing that he would have reached the same decision in the absence of the protected conduct.

thority for the proposition that a public official is personally liable for failure to train his subordinates before allowing those subordinates to evaluate employees. Plaintiffs' theory is that one must anticipate that whenever a supervisor in the public sector evaluates unionized employees, there is a possibility that the supervisor will exercise anti-union animus and will judge union employees more harshly than non-union employees. The general rule in this area, that a municipality may be liable for failure to train when such failure amounts to deliberate indifference, appears to be restricted to police cases and has never been applied to evaluation training. While this Court is willing to venture into the uncharted contours of the law, under *Harlow* it cannot hold Williams liable under these unestablished theories. Accordingly, the Court holds that all plaintiffs, including Escobar, fail to state a claim against Williams in his individual capacity under 42 U.S.C. § 1983 for failure to train, because Williams is entitled to qualified immunity as to these claims which have not been clearly established in this or any other circuit.

## IV. Conclusion

For the reasons stated, defendants' motion to dismiss is GRANTED in part and DENIED in part.

An appropriate order shall accompany this opinion.

**IT IS SO ORDERED.**