815 A.2d 919

**Tanya POPE–PAYTON,**

**v.**

**REALTY MANAGEMENT SERVICES, INC.**

**No. 00081.**

Court of Special Appeals of Maryland.

Jan. 31, 2003.

Leizer Z. Goldsmith (Kathrina Peterson, on the brief), Washington, DC, for appellant.

Stanley J. Reed (Suzanne S. Nash and Lerch, Early and Brewer, Chartered, on the brief), Bethesda, for appellee.

SALMON, SONNER, and KRAUSER, JJ.

SALMON, Judge.

Tanya Pope Payton ("Ms.Pope Payton") was diagnosed with multiple sclerosis ("M.S.") on October 6, 2000, while she was employed by Realty Management Services, Inc. ("RMS"). Approximately thirteen months after her diagnosis, Ms. Pope Payton filed suit against RMS in the Circuit Court for Prince George's County alleging that RMS, in violation of section 2–222 of the Prince George's County Code, discriminated against her in various ways because of her physical disability.

RMS filed a motion to dismiss on the grounds that the appropriate venue was Montgomery County. RMS contended that venue was governed by article 49B, sections 42(a) and (b),

of the Maryland Annotated Code (1957, 1998 Repl.Vol.), which read:

### § 42. Civil actions for discriminatory acts-Montgomery County, Prince George's County, and Howard County.

(a) *Authorized.*–In Montgomery County, Prince George's County, and Howard County, in accordance with this subtitle, a person who is subjected to an act of discrimination prohibited by the county code may bring and maintain a civil action against the person who committed the alleged discriminatory act for damages, injunctive relief, or other civil relief.

(b) *Limitations periods.*-(1) *An action under subsection (a) of this section shall be commenced in the circuit court for the county in which the alleged discrimination took place* not later than 2 years after the occurrence of the alleged discriminatory act.

(Emphasis supplied.)

The narrow question presented to us is whether the discrimination alleged in Ms. Pope Payton's complaint "took place" in Prince George's County. The answer to that question depends on the resolution of a subordinate issue, *i.e.,* whether discrimination "takes place" only in the county where the decision to discriminate is made or whether discrimination may also take place in the county where the decision to discriminate was implemented.

■ The matter was considered by a motions judge in the Circuit Court for Prince George's County who ruled that the proper venue was Montgomery County; accordingly the case was transferred from Prince George's County to Montgomery County. After filing a motion to alter or amend the judgment, which was denied, Ms. Pope Payton filed this timely appeal.[1]

---

1. A judgment transferring a case to another county is a final, appealable judgment. *See Brewster v. Woodhaven Bldg. & Dev., Inc.,* 360 Md. 602, 615–16, 759 A.2d 738 (2000).

## I. *ALLEGATIONS IN THE COMPLAINT*

In April 2000, Ms. Pope Payton was hired as a "leasing consultant" by a property management company known as Equity Management. Her job was to lease apartments, review leases, and handle complaints by renters. She performed these duties at Jefferson Hall, an apartment complex located in Riverdale, Maryland, and at Cambridge Crossing (another apartment complex) located in New Carrollton, Maryland. Both Riverdale and New Carrollton are in Prince George's County.

RMS assumed control of some of the rental properties formerly managed by Equity Management on September 1, 2000. Two of the properties taken over by RMS were Jefferson Hall and Cambridge Crossing. Ms. Pope Payton became an RMS employee on September 1.

Approximately one month after Ms. Pope Payton commenced employment with RMS, she began to experience headaches, slurred speech, and difficulty in walking. She consulted her family doctor who, on October 6, 2000, diagnosed her as having M.S. Ms. Pope Payton was off from work for one month after that diagnosis was made. She returned to work at Jefferson Hall on November 6, 2000. One day after her return to work, Jamie Russell, who was RMS's general manager, asked Ms. Pope Payton to meet her at RMS's main office in Bethesda and to "bring all her doctor's notes" with her. The two met in Bethesda (Montgomery County), Maryland, on November 8, 2000. Ms. Russell told Ms. Pope Payton at that meeting that while the latter was out sick, RMS had decided to downsize its staff at both Jefferson Hall and Cambridge Crossing; as a consequence of that decision, Ms. Pope Payton's position was being eliminated. Ms. Russell, nevertheless, assured Ms. Pope Payton that she could still work for RMS at two other apartment buildings it managed in Prince George's County, *i.e.,* Shadyside Gardens in Suitland, or Kennebec House in Oxon Hill. Ms. Russell said she would give her the choice between those two work sites but that she wanted Ms. Pope Payton to make her choice within the next

two days. Ms. Russell also informed Ms. Pope Payton that she was expected to begin work at the apartment building she chose on Monday, November 13, 2000.

The day after the meeting with Ms. Russell, Ms. Pope Payton called the assistant manager at Park Place (another residential apartment building managed by RMS) and was told that Park Place had an opening for a leasing consultant. Because Park Place was in Bladensburg, Maryland, near Ms. Pope Payton's home, this position was attractive to her. On Friday, November 10, 2000–the deadline for a decision set by Ms. Russell–Ms. Pope Payton sent a letter to Ms. Russell telling her that, because of her illness, coupled with the short notice, she could not decide where she wanted to work.

Ms. Pope Payton wrote to Ms. Russell again on November 15, 2000; this time she requested accommodations for her handicap by allowing her to work at Jefferson Hall or Cambridge Crossing for 30 hours per week; she also demanded that RMS supply her with ergonomic equipment consisting of a high back chair with cushion, a footrest, a headset, and a glare screen filter for her computer.

The director of human resources for RMS (the "Director") wrote Ms. Pope Payton on November 16 and told her to report for work at Kennebec House on November 17 at 8:30 a.m. Ms. Pope Payton did not report to work as directed; instead, on November 17, she wrote to the Director and asked once again to be allowed to work at Jefferson Hall or Cambridge Crossing.

On December 4, 2000, Ms. Pope Payton's attorney notified RMS that his client was willing to work full-time and was able to perform the essential job duties of a leasing consultant. The attorney also notified RMS that his client could work at Jefferson Hall, Cambridge Crossing, Park Place, "or anywhere else that his client could find transportation to and from work."

Ms. Pope Payton has not worked for RMS since November 8, 2000. According to her complaint, her physical handicap makes it necessary that she work close enough to her home so that she can "find transportation" to and from work. Several

job sites managed by RMS were close enough to her home so that she could have found transportation and worked there. These sites were: Jefferson Hall and Eastdale Apartments (Riverdale); Cambridge Crossing and Lenox Court Apartments (New Carrollton); Park Place Towers (Bladensburg); Cypress Creek, Kings Park Plaza, Overlook Apartments, and Prince George's Towers (Hyattsville).

In addition to the allegation that she was constructively discharged by RMS by its failure to accommodate her disability, Ms. Pope Payton alleged that RMS never provided her with health insurance but, "upon information and belief," provided health insurance to other non-handicapped employees.

The complaint alleged that RMS engaged in several acts of discrimination that were prohibited by the Prince George's County Code. Ms. Pope Payton's rights under the Code were alleged to have been violated as follows:

By subjecting [her] to less favorable terms and conditions of employment based on her status as a person with a physical handicap. . . .

\* \* \*

By failing to reasonably accommodate [her] physical handicap by allowing her to work in her current position and location, or another location that she could reach. . . .

\* \* \*

By discharging [her] in response to her request for reasonable accommodation, . . . .

## II. *DEFENDANT'S MOTION TO DISMISS OR TO TRANSFER VENUE AND PLAINTIFF'S RESPONSE*

RMS's motion to dismiss was filed pursuant to Maryland Rule 2–322(a). In the memorandum of law that accompanied the motion, RMS asserted that all

the discriminatory decisions affecting [p]laintiff's employment with RMS, the unlawful acts undertaken by RMS

employees, and the relevant meetings between [p]laintiff and the regional general manager of RMS "occurred" at, or from RMS'[s] main office in Bethesda, Maryland.[2]

According to RMS's motion, the complaint alleged discrimination by virtue of the "adverse employment decisions" made by it. RMS argued that, even if Ms. Pope Payton suffered the effects of these adverse employment decisions in Prince George's County, suit must nevertheless be brought in the county where the plaintiff alleges that the "discriminatory decisions were made." [3]

### III. *ANALYSIS*

Ms. Pope Payton interprets the "where the discrimination takes place" language contained in article 49B, section 42(b), to mean that venue is proper in the jurisdiction where the effects of the alleged discriminatory decision are felt, not where the decision to discriminate is made.

Prior to 1990,[4] Montgomery County, Prince George's County, and Howard County each enacted county ordinances creat-

---

**2.** Maryland Rule 2-311(d) reads:

**Affidavit.** A motion or a response to a motion that is based on facts not contained in the record or papers on file in the proceeding shall be supported by affidavit and accompanied by any papers on which it is based.

No affidavit accompanied RMS's motion. And nothing in the complaint shows where *any* decision was made by RMS. This failure to abide by the rules was not, however, raised by appellant-either in this court or in the trial court.

**3.** As an additional ground to transfer the case, RMS's motion raised the issue of *forum nonconveniens. See* Md. Rule 2-327(c). The memorandum that accompanied RMS's motion did not, however, set forth any facts showing why Prince George's County was an inconvenient forum. In its brief, RMS concedes that the motions judge did not transfer the case based on Maryland Rule 2-327(c). This concession is well founded inasmuch as there was absolutely no basis upon which a court could have found, based on the facts properly before the court, that Prince George's County was an inconvenient forum.

**4.** *See* Montgomery County Code § 27-20(a) (1973); Prince George's County Code § 2-200 (1972); Howard County Code § 12.217 (1983).

ing a private cause of action for claims of employment discrimination arising in those counties.

The Court of Appeals held in *McCrory Corporation v. Fowler*, 319 Md. 12, 570 A.2d 834 (1990), that Montgomery County's statute was "not within the power of Montgomery County to enact" because the creation of a private cause of action for employment discrimination had not been allowed by the General Assembly and the ordinance did not otherwise qualify as a "local" matter within the meaning of the Maryland Constitution. *Id.* at 24, 570 A.2d 834.

In response to the *McCrory* decision, the General Assembly, in 1992, authorized the passage of the ordinance previously enacted by the Montgomery County Council. *See* H.B. 722, 1992 Leg., 406th Sess. (Md.1992); *see also* Stanley Mazaroff, *Maryland Employment Law*, § 7.01, 466 (2d ed.2001). H.B. 722 was codified in article 49B, section 42, which provided:

(A) In accordance with this subtitle, a person who is subjected to an act of discrimination prohibited by the Montgomery County Code may bring and maintain a civil action against the person who committed the alleged discriminatory act for damages, injunctive relief, or other civil relief.

(B)(1) An action under subsection (A) of this section shall be commenced in the Circuit Court for Montgomery County not later than 2 years after the occurrence of the alleged discriminatory act.

Md.Code Ann., Art. 49B, § 42 (1957, 1991 Repl.Vol. & Supp. 1992).

The General Assembly, in 1993, expanded article 49B, sections 40 and 42, to include the laws (authorizing private lawsuits against employers who discriminate) previously enacted by the county councils in Prince George's and Howard Counties. H.B. 330, 1993 Leg., 407th Sess. (Md.1993). The 1993 amendment to article 49B, section 42(b)(1) deleted "Circuit Court for Montgomery County" and replaced it with the phrase "Circuit Court for the County in which the alleged discrimination took place." No further amendments have

since been made to the language of article 49B, section 42(b)(1).

The phrase, "take place," is defined as "to happen" or "occur." The American Heritage College Dictionary 1383 (3d ed.1997).

Both parties support their position concerning venue by referring us to federal cases interpreting the venue provision found in 42 U.S.C. § 2000e–5(f)(3), which reads:

> Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this title. *Such an action may be brought in any judicial district in[: (i)] the State in which the unlawful employment practice is alleged to have been committed,* [ (ii)] in the judicial district in which the employment records relevant to such practice are maintained and administered, or [ (iii)] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, [ (iv)] such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.[5]

(Emphasis added.)

In our view, the place where the discriminatory acts "have been committed" would usually be the same place where the discriminatory act "took place" or where the act "occurred" or "happened." Thus, cases interpreting the phrase "in any

---

**5.** To facilitate our discussion, we have broken down the available jurisdictional venues set forth in the federal statute into four components/elements, which we have numbered (i), (ii), (iii), and (iv) in the body of the quoted provision. In the statute itself, the four categories are not numbered.

judicial district in the state in which the unlawful employment practice is alleged to have been committed" are useful.[6]

In support of its contention that discrimination takes place where the alleged discriminatory decision is made, RMS refers us to three federal cases, *i.e.*, (1) *Hayes v. RCA Service Company*, 546 F.Supp. 661 (D.D.C.1982); (2) *Johnson v. Washington Gas Light Company*, 89 F.Supp.2d 45 (D.D.C. 2000); and (3) *Gwin v. Reynolds & Reynolds Company*, 2001 WL 775969, 2001 U.S. Dist. LEXIS 9520 (N.D.Ill.2001).

In *Hayes v. RCA*, the plaintiff, Hayes, filed suit in the District of Columbia alleging employment discrimination in violation of Title VII and 42 U.S.C. § 1981. 546 F.Supp. at 662–63. Hayes, an African American, was employed by the defendant in Hyattsville, Maryland. *Id.* at 663. He alleged that

(1) ... [he] was not promoted to a managerial position, even though less qualified white employees were advanced to such positions; (2) ... [he] was placed on involuntary leave of absence ... because of a physical handicap, while white employees with similar physical limitations were retained and given "light duty" positions; (3) ..., due to his race, [he] was assigned to work in high crime areas, denied training opportunities necessary for promotion, and denied a permanent assignment to the Hyattsville, Maryland shop; and (4) ... the defendants compensated black employees, including [him], at rates lower than comparable white employees.

*Id.*

Hayes' employer took the position that venue in the District of Columbia was improper under Title VII. *Id.* at 662. Noting

---

**6.** In *Kohli v. LOOC, Inc.*, 103 Md.App. 694, 714, n. 7, 654 A.2d 922 (1995), we said:

Because Article 49B is modeled after Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq., *see University of Maryland v. Boyd*, 93 Md.App. 303, 314, 612 A.2d 305 (1992), we may look to federal case law interpreting Title VII in analyzing claims under Article 49B.

that 42 U.S.C. § 2000e–5(f)(3)(i) [7] provides for venue "in any judicial district . . . in which the unlawful employment practice is alleged to have been committed," Judge Sirica said:

> In the first of these situations, the proper district is the one where the alleged unlawful employment practice was committed. *Therefore, the Court must look to the place where the decisions and actions concerning the employment practices occurred.* In the present instance, the decisions which are said to have wrongfully denied the plaintiff promotions, light duty work, training opportunities and equal pay all took place in the defendant's Hyattsville, Maryland service center. While the plaintiff does complain of being assigned to routes located in the District of Columbia, the decision to assign those routes was made in Hyattsville, Maryland, at the service center. As such, this first situation does not provide a basis for finding proper venue as to the Title VII cause of action in the District of Columbia.

*Id.* (emphasis added).

Judge Sirica ultimately ruled that the alternative grounds for venue set forth in 42 U.S.C. § 2000e–5(f)(3)(ii) and (iii) [8] were also inapplicable; as a consequence, he ruled the District of Columbia was not the proper venue. Accordingly, the case was transferred to Maryland. *Hayes,* 546 F.Supp. at 665–66.

The language used in *Hayes* is somewhat favorable to RMS in that proper venue is to be where "the decision and actions concerning the employer's practices occurred." It should be noted, however, that decisions and actions do not necessarily occur in the same venue. *See Cox v. National Football League,* 1997 WL 619839, 1997 U.S. Dist. LEXIS 15307 (N.D.Ill. Sept. 29, 1997). In any event, the *Hayes* case is factually distinguishable from the one at bar because in *Hayes* the forum chosen by the plaintiff-employee was not the place where he was exclusively employed or where all of the discriminatory decisions were implemented.

---

7. *See, supra,* n. 5.

8. *See, supra,* n. 5.

The plaintiff in *Johnson v. Washington Gas* filed suit in the District of Columbia alleging, *inter alia*, violation of "federal and state race discrimination" statutes. 89 F.Supp.2d at 45. The defendant sought to transfer venue to Virginia. *Id.* The plaintiff lived in Maryland and had worked in both Virginia and Maryland. *Id.* Washington Gas Light Company was incorporated in the District of Columbia and had operations in the Washington metropolitan area. *Id.* Over the course of seventeen years the plaintiff applied for four positions within the Washington Gas Light Company but was unsuccessful due (allegedly) to his employer's discrimination. *Id.* at 46.

Judge Robertson denied the defendant's motion to transfer venue, but in doing so noted that under 42 U.S.C. § 2000e–5(f)(3)(i) and (ii),[9] the District of Columbia court did not have venue. *Id.* at 46. Judge Robertson explained his reasoning in a footnote:

> Plaintiff contends that he was assigned to one of defendant's District of Columbia locations in 1995 where "the discriminatory activities, retaliation, and reprisal which Plaintiff has complained, have taken place and continue to take place," but the inquiry for this venue provision turns on where the allegedly discriminatory decision was made, . . . . The selections for the positions that plaintiff sought were made at the [Springfield Operations Center] in Springfield, VA.

*Id.* at 46 n. 3.

As authority for that view, Judge Robertson relied on Judge Sirica's opinion in *Hayes, supra*, and upon *Milburn v. Stone*,[10] 1991 WL 7660 at *1 (D.D.C. Jan.7, 1991). *Id.*

---

9. *See, supra*, n. 5.

10. In *Milburn v. Stone*, Judge Oberdorfer, without citing any authority relevant to 42 U.S.C. § 2000e–5(f)(3)(1), interpreted the phrase "in the judicial district in the state in which the unlawful employment practice is alleged to have been committed" as meaning "where the decision not to promote [plaintiff] was made. . . ." 1991 WL 7660, at *1.

In *Gwin v. Reynolds & Reynolds*, the plaintiff sued the defendant in Illinois under Title VII and the defendant filed a motion to transfer venue. 2001 WL 775969, at *1, 2001 U.S. Dist. LEXIS 9520, at *1. The plaintiff in *Gwin* was a resident of Maryland who had never worked for the defendant in Illinois. *Id.* at *1, 2001 U.S. Dist. LEXIS 9529, at *2. The defendant's principal place of business was in Ohio but it had branch offices located in Illinois. *Id.* Judge Hibbler granted the defendant's motion to transfer venue, explaining why the plaintiff had failed to meet his burden under 42 U.S.C.2000e–5(f)(3)(i),[11] as follows:

> First, to determine where the alleged practice occurred, this Court must look to the location of where the *decisions and actions regarding the employment practices took place.* Defendant claims that [plaintiff] can in no way assert that [defendant's] decisions concerning the alleged discrimination occurred in Illinois. Because [plaintiff] never worked in Illinois, Defendant argues that he cannot satisfy the first element of § 5(f)(3). [Plaintiff] has failed to sufficiently counter Defendant's argument. Therefore, this Court finds that the first element of § 5(f)(3) has not been satisfied.

*Id.* at *1, 2001 U.S. Dist. LEXIS 9520, at *4 (citations omitted)(emphasis supplied).

RMS's reliance on *Gwin* is misplaced. Here, unlike *Gwin*, the plaintiff worked for the employer in the venue (Prince George's County) she chose, whereas in *Gwin*, the reason given for finding improper venue was that the plaintiff-employee never worked for the defendant-employer in the venue selected.

In addition to the federal cases, RMS relies on *Barnes v. IBM Corporation*, 212 Mich.App. 223, 537 N.W.2d 265 (1995). In *Barnes*, the plaintiff sued his employer in the Wayne County, Michigan, Circuit Court, alleging racial discrimination and intentional infliction of emotional distress. 537 N.W.2d at 265. The illegal action sued upon was described in the *Barnes*

---

11. *See, supra,* n. 5.

opinion cryptically as "adverse employment decisions," and Wayne County was said *not* to be the "locus of [the plaintiff's] employment." *Id.* at 266 (White, J. Helene, concurring). The defendant in *Barnes* sought a change of venue from Wayne County to Oakland County, which was denied by the trial court. *Id.* at 265–66. That decision was reversed by the Michigan Court of Appeals. *Id.* at 266.

The venue provision discussed in *Barnes* was the Michigan Civil Rights Act, which provided that an action

> may be brought in the circuit court for the county where the alleged violation occurred, or for the county where the person against whom the civil complaint is filed resides or has his principal place of business.

*Id.* at 265. Michigan's venue provision for tort actions (such as the intentional infliction of emotional distress action brought by the *Barnes* plaintiff) provided that a plaintiff could file suit in

> "[a] county in which all or part of the cause of action arose and in which either" defendant resides, has a place of business or conducts business, or where defendant's registered corporate office is located.

*Id.* (quoting Mich. Comp. Laws § 600.1629(1)(a) (2002)).

The *Barnes* court's majority opinion noted that venue would be proper (under either statute) in Oakland County because the defendant's corporate office in Michigan was located there and the allegedly discriminatory and tortious decisions were made there. *Id.* at 266. The plaintiff, however, contended that venue was proper in Wayne County because "that is where he experienced at least some of the effects of the defendants' decisions and where he suffered resulting damages." *Id.*

Two of the three judges on the *Barnes* panel rejected the plaintiff's argument and said:

> [A]llowing an action to be brought where its effects or damages occur would encourage forum shopping in contravention of the goals of the venue provisions. Further, the civil rights statute clearly provides that venue is proper

where "the alleged violation occurred," not where its effects were felt or where the damages accrued. The violations alleged are adverse employment decisions. Although plaintiff performed some work in Wayne County, he has provided no credible factual evidence that any of the allegedly discriminatory decisions were made in Wayne County, as distinguished from their effects being felt there.

*Id.* (citations omitted).

But, in a concurring opinion, Judge Helene N. White wrote: Discrimination also "occurs" in the county where the decision is implemented and the discrimination is inflicted. In the instant case, however, while plaintiff performed some work activities in Wayne County, that was not the locus of his employment, so that it does not appear that decisions made elsewhere were implemented, and discrimination was inflicted, in Wayne County, as distinguished from effects being felt there.

*Id.* at 266 (citations and footnote omitted).

The language used in the majority opinion in *Barnes* supports RMS's position, although (1) the language of Michigan's venue statute concerning discrimination suits is not identical to that used in article 49B, section(b)(1), and (2) the plaintiff in *Barnes,* unlike the plaintiff in the case *sub judice,* did not regularly work in the county where suit was instituted.

Ms. Pope–Payton rejects the reasoning of the Michigan Court of Appeals and the three federal district court cases just discussed. She relies on two federal district court cases and a decision of the United States Court of Appeals for the Ninth Circuit.

In *McDonald v. American Federation of Musicians,* 308 F.Supp. 664, 665–66 (N.D.Ill.1970), members of a local musicians union in Chicago brought suit in Illinois against the international union because the international union imposed a fee on local members in violation of Title VII. The defendant raised the defense that venue was improper in Illinois because the decision to impose the fee was made in Florida and because its principal office was in New York. *Id.* at 670. The

court held that the defendant's contention was without merit. *Id.* The court explained:

> The plaintiffs live and work in this district and were required to repay the fees here. The fact that the decision that required them to do so was made elsewhere does not necessitate the conclusion that no alleged act of discrimination occurred in this district. *It taxes common sense to suggest otherwise.*

*Id.* (emphasis supplied).

In *Cox v. National Football League* ("NFL"), 1997 WL 619839, 1997 U.S. Dist. LEXIS 15307 (N.D.Ill. Sept. 29, 1997), Bryan Cox, a Chicago Bears football player, filed suit in New York, alleging that the NFL and Commissioner Tagliabue breached their duty under Title VII of the Civil Rights Act by failing to maintain a work environment that was free from "racial harassment, intimidation, or insult." 1997 WL 619839, at *1, 1997 U.S. Dist. LEXIS 15307 at *2. While the New York action was pending, the NFL and Tagliabue fined Cox one game check (over $80,000) for football-related misconduct on Cox's part. 1997 WL 619839, at *1, 1997 U.S. Dist. LEXIS 15307, at *2. Once the Chicago Bears were notified of the league's action, the team deducted the fine from Cox's pay check. 1997 WL 619839, at *1, 1997 U.S. Dist. LEXIS 15307, at *2

Cox filed a second suit against the NFL and Commissioner Tagliabue, alleging that the large fine was imposed in retaliation for his filing of the prior suit. 1997 WL 619839, at *1, 1997 U.S. Dist. LEXIS 15307, at *3. The second suit was filed in Illinois. *Id.* at *1–2, 1997 U.S. Dist. LEXIS 15307, at *2–3. According to the complaint, the NFL had previously imposed no fine or a small fine for conduct similar to Cox's. *Id.*

The NFL and Commissioner Tagliabue filed a motion in the second case in which they argued that the Illinois suit should be dismissed for improper venue because the Commissioner's decision to impose the fine was made in New York and therefore Illinois was not the state in which the unlawful employment practice was alleged to have been committed. *Id.*

at *1, 1997 U.S. Dist. LEXIS 15307, at *5. The defendants also argued that management's act of forwarding monies from Cox's check to the NFL was only an effect of the unlawful practice of the commissioner's decision to impose the fine. *Id.*

The *Cox* court said:

In determining where the unlawful practice is alleged to have happened, a court "must look to the place where the decisions and actions concerning the employment practices occurred." *Hayes v. RCA Serv. Co.,* 546 F.Supp. 661, 664 (D.D.C.1982). In this case, although the decision to impose a fine on Cox was made by [the Commissioner] in New York, the acts of imposing the fine and paying a fine by mailing Cox's game check to the NFL was performed by the management of the Chicago Bears in Illinois.

\* \* \*

[T]he defendants' argument is without merit. First, we find the defendants' formalistic decision-versus-effect dichotomy unpersuasive. As stated above, *a court looks to where the decision and actions concerning the employment practices occurred.* The Chicago Bears Club of the NFL imposed the fine on Cox in Illinois by mailing his game check to New York. Cox lives and works in ... Illinois and, thus, was required to pay the fine here. To hold otherwise would encourage employers to make their decisions to terminate and discipline in far away offices in order to protect themselves from litigation.

*Id.* at *3, 1997 U.S. Dist. LEXIS at *5–7 (emphasis supplied).

The U.S. Court of Appeals for the Ninth Circuit also reached a conclusion similar to that reached in *Cox* in *Passantino v. Johnson & Johnson Consumer Products, Inc.,* 212 F.3d 493 (9th Cir.2001). Ms. Passantino worked in Washington state, and her employer's office was located in New Jersey. *Id.* at. 499–501. After Ms. Passantino complained to her superiors about disparaging comments made by her male co-workers, her employer passed her over for several job promotions. *Id.* at 502–03. The employer then offered Ms.

Passantino positions that she considered to be demotions. *Id.* Ms. Passantino filed a Title VII suit in Washington, complaining about the aforementioned actions of her employer. *Id.* at 503. The defendant moved for a change of venue to New Jersey, which was denied. *Id.* at 504.

On appeal, the employer contended that venue was improper in Washington because the employer made the decisions not to promote the plaintiff in New Jersey; therefore, according to the defendant, venue was proper only in New Jersey. *Id.* The plaintiff countered by asserting that the "unlawful action occurs where its effects are felt." *Id.*

The *Passantino* court said:

[T]he statute itself and analogous case law suggest that venue should be found where the effect of the unlawful employment practice is felt: where the plaintiff works and the decision to engage in that practice is implemented.

[Defendant], however, would have us reject such a rule, at least for cases involving failure to promote, in favor of one that would allow venue only where the decision to commit the unlawful employment practice is made. We find this theory unpersuasive for several reasons. First, [defendant's] theory would require us to draw a distinction between promotional claims and other types of Title VII claims-which allow venue where the plaintiff is employed.[12] Had [plaintiff] been wrongfully discharged or subjected to a hostile work environment, she could have sued in the district where she worked. Nothing in the text or history of the statute's venue provision suggests that a different rule should apply in failure-to-promote cases. Plaintiffs unlawfully denied a promotion, like those discharged, feel the effects of their injury where they actually work.

[Defendant] suggests that the rule advanced by Passantino would leave corporations which employ people in far-

---

**12.** The court is referring to the federal venue provision that allows suit to be brought "in any judicial district in the state in which the unlawful employment practice is alleged to have been committed." *See* 42 U.S.C. § 2000e–5(f)(3).

away home offices vulnerable to suit in distant fora, a problem which it warns will increase in the internet age. [Defendant] is concerned that "potential plaintiffs could evaluate their preferred locations for bringing a lawsuit and simply relocate their home offices within that jurisdiction." This forum shopping scenario seems fanciful; .... It is of more concern that national companies with distant offices might try to force plaintiffs to litigate far away from their homes, as [defendant] seeks to do here.

\* \* \*

Thus, *we hold that venue is proper in both the forum where the employment decision is made and the forum in which that decision is implemented or its effects are felt.*

*Id.* at 505–06 (emphasis supplied).

As mentioned earlier, the phrases "took place" and "to happen" have equivalent meanings. In our view, the discrimination, which Ms. Pope–Payton alleges, happened in Prince George's County because it was there that RMS's alleged decision to discriminate was implemented. If the decision had not been implemented, no discrimination could be said to have "taken place." The decision by the Ninth Circuit in *Passantino, supra,* and by the federal district court judges who authored the opinions in *Cox, supra,* and *McDonald, supra,* support that view.

Aside from the wording used in the statute and our agreement with the reasoning of the *McDonald, Cox,* and *Passantino* decisions, additional grounds exist to reject the interpretation of article 49B, section 42(b)(1), advocated by RMS. Unlike *all* of the cases cited by RMS, the plaintiff here worked (and lived) exclusively in the venue where suit was brought. And, as demonstrated *infra,* the effect of the discriminatory action upon the employee was exclusively in the venue chosen by the employee. Moreover, the ordinance the plaintiff sought to enforce was one enacted by the legislative body of the venue plaintiff chose. Under these circumstances, we believe it would produce an absurd result to interpret the statute *as*

*requiring* the transfer of this case to Montgomery County so that a circuit court of that jurisdiction could interpret and enforce an ordinance passed by the Prince George's County Council. *Cf. Adamson v. Corr. Med. Serv., Inc.*, 359 Md. 238, 252, 753 A.2d 501 (2000)(Statues should be interpreted so as to "avoid unreasonable or illogical results that defy common sense.").

We turn now to the allegations in Ms. Pope–Payton's complaint to determine where RMS's alleged discriminatory decisions were implemented. As noted earlier, Ms. Pope–Payton alleged that RMS discriminated against her: (1) by failing to accommodate her physical handicap, *i.e.*, not allowing her to work in her prior position and at the place of her prior work location or at other locations that she could reach; (2) by subjecting her to less favorable terms and conditions of employment because of her physical handicap, *e.g.*, not providing her with health insurance but providing it to other non-handicapped employees; and (3) by constructively discharging her in response to her request for reasonable accommodation. These discriminatory decisions were all implemented in Prince George's County (the locus of her employment).

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR TRIAL;**

**COSTS TO BE PAID BY APPELLEE.**